IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 28, 2006 Session

## JAMES E. GOODALE, ET AL. v. CHARLES LANGENBERG, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 87787 T.D.      Kay S. Robilio, Judge**

---

**No. W2003-01919-COA-R3-CV - Filed June 26, 2007**

---

Plaintiff purchasers sued Defendant sellers, real estate agent, and real estate company alleging intentional fraud and seeking rescission of a contract to purchase real property and punitive damages. The matter was tried by a jury, which awarded Plaintiffs rescission of the contract and assessed punitive damages against Defendant real estate agent. The trial court further awarded Plaintiffs discretionary costs and attorney's fees, which it assessed against Defendant sellers and real estate agent jointly and severally. The jury also determined real estate agent was an independent contractor and that Defendant real estate company was, therefore, not vicariously liable for punitive damages. Plaintiffs and Defendant sellers subsequently entered into a confidential, sealed settlement under which Plaintiffs received a substantial partial refund of the purchase price and retained ownership of the real property. Defendant real estate agent appeals the award of punitive damages and the award of attorney's fees. Appellant additionally asserts the post-trial settlement between Plaintiffs and Defendant sellers resulted in an election of damages as a remedy or, alternately, in accord and satisfaction of the judgment. Plaintiffs cross-appeal, asserting the jury verdict finding that Defendant real estate agent was an independent contractor is not supported by the evidence. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Robert V. Redding, Jackson, Tennessee, for the appellant, Tammy Bunnell.

Dale Hederick Tuttle, Memphis, Tennessee, for the appellee, Crye-Leike Realtors.

Regina Morrison Newman and James Wesley Hodges, Jr., Memphis, Tennessee, for the appellees, James E. Goodale and Hazel F. Goodale.

**OPINION**

This appeal arises from an action for rescission of a contract to purchase residential real property which was commenced in May 1997 and which, after nearly ten years, a lengthy jury trial, a plethora of motions and hearings, secret settlements, and the creation of a sizable record has become somewhat complicated procedurally. Events leading to the dispute between the parties began in 1996, when Defendant sellers Charles Langenberg and Martha Langenberg (collectively, "Langenbergs") listed their home, which was built in 1994, with Crye-Leike real estate agent Tammy Bunnell (Ms. Bunnell). Plaintiffs James Goodale and Helen Goodale (collectively, "Goodales") purchased the home in May 1996. A year later, on May 23, 1997, Goodales filed a complaint against Langenbergs, Ms. Bunnell, and Crye-Leike, Inc. ("Crye-Leike") in the Circuit Court of Shelby County.[1] In their complaint, Goodales alleged that soon after they occupied the home in July 1996, cracks appeared in the interior walls and ceilings and the exterior walls, and that doors became difficult to open and close. They further alleged that, although Langenbergs and Ms. Bunnell had indicated on the Tennessee Residential Property Condition Disclosure that the only defect/malfunction in the home was a crack in the exterior mortar which had been repaired, further inspection revealed that a section of the front porch had been jack-hammered out and the walls buttressed. Goodales alleged breach of duty, fraud, and misrepresentation on the part of Langenbergs and Ms. Bunnell. They prayed for rescission of the contract, compensation of expenses incurred, and punitive damages. In the alternative, they prayed for compensatory and punitive damages. Goodales also sought recovery against Crye-Leike based on the doctrine of *respondeat superior*.

Phase I of the trial of this matter concerned issues of liability and was heard by a jury from March 19 through April 9, 2001. The jury determined that Ms. Bunnell was an independent contractor, thus exonerating Crye-Leike from liability based on *respondeat superior*. The jury found Langenbergs and Ms. Bunnell liable to Goodales for intentional misrepresentation, and determined that Goodales could not be made whole without rescission of the real estate contract. The jury accordingly awarded rescission of the contract and determined Langenbergs and Ms. Bunnell were jointly and severally liable for the refund of $277,260.43 paid by the Goodales at closing; moving expenses in the amount of $1,600; and prejudgment interest in the amount of 8.5% on the $278,860.43 from June 26, 1996. The jury also determined that Goodales were entitled to punitive damages against Ms. Bunnell. The matter of punitive damages was heard by the jury in Phase II of the trial on April 10, 2001. The jury assessed punitive damages against Ms. Bunnell in the amount of $75,000.

In May 2001, Goodales moved for costs and for reasonable attorney's fees. The trial court granted this motion in June 2003, awarding Goodales costs in the amount of $24,683.91 and attorney's fees in the amount of $115,740 for fees incurred as of March 6, 2003. Judgment for fees was entered against Ms. Bunnell and Langenbergs jointly and severally.

---

[1]Goodales also included Terry Fortwengler, builder of the home, MRI Relocation Management, John Doe Architect and Joe Doe Architectural Firm in their complaint, alleging negligence and breach of duty. By the time this matter was tried, claims against these defendants had been voluntarily dismissed or severed for separate trial.

In the meantime, Ms. Bunnell, Langenbergs and Goodales filed post-trial motions on June 1, 2001. Ms. Bunnell moved for judgment in accordance with her motion for directed verdict pursuant to Rule 50. In her motion, Ms. Bunnell asserted Goodales had failed to prove all elements of intentional misrepresentation and had, as a matter of law, failed to present clear and convincing evidence sufficient to submit the case to the jury on the issue of punitive damages. She also filed an alternative motion to alter or amend the judgment pursuant to Rule 59.04, asserting the only remedy sought by Goodales was the equitable remedy of rescission and that, because she was not a party to the contract, there was no basis on which an award could be assessed against her. Ms. Bunnell further moved, in the alternative, for a new trial. In her motion for new trial, Ms. Bunnell asserted, *inter alia*, that the verdicts in Phase I and Phase II were contrary to the weight of the evidence and that the trial court erred by refusing to admit the testimony of her attorney, Latham Oates, in Phase I of the trial; by submitting the question of punitive damages to the jury where the remedy was rescission; in its instructions to the jury; and by limiting her ability to cross-examine witnesses. She also asserted that the jury verdict form was inconsistent and confusing. Langenbergs also filed a Rule 59 motion for new trial, asserting the verdict was not supported by the evidence and that the trial court erred in its instructions to the jury; in excluding the testimony of Latham Oates; and in excluding evidence offered to impeach. Goodales likewise filed a Rule 59 motion to alter or amend the judgment in favor of Crye-Leike in Phase I of the trial or, in the alternative, for a new trial. Goodales asserted that the evidence preponderated against the verdict in favor of Crye-Leike; that the trial court erred in permitting the question of Ms. Bunnell's agency relationship with Crye-Leike to go to the jury; and that the court erred in failing to rule that Crye-Leike was an actual party to the real estate contract.

In July 2001, Goodales moved to strike Ms. Bunnell's motion of June 1, asserting it was not made in compliance with Rule 7 of the Local Rules of the court. Goodales also moved the court to strike Langenbergs' motion for new trial, asserting that the motion had not been served withing thirty days of judgment and that it was not made in compliance with Local Rule 7. In August 2001, Crye-Leike filed a motion to strike Goodales' motion to alter or amend/for a new trial. In its motion, Crye-Leike asserted Goodales also had failed to comply with Local Rule 7 and should, therefore, be estopped from asserting it. Crye-Leike argued, "[e]ither all the Motions for a New Trial in this matter should be dismissed or all motions should be heard and ruled upon at the same time for purposes of triggering the time for filing notices of appeal in this matter."

The trial court denied Ms. Bunnell's motions in June 2003. The trial court also denied Goodales' motion for a new trial as to Crye-Leike on July 18, 2003, and entered final judgment with respect to the claims against Crye-Leike pursuant to Rule 54.02 Goodales filed a timely notice of appeal to this Court. Goodales moved the trial court to also enter final judgment as to Ms. Bunnell pursuant to Rule 54.02. The trial court granted this motion on July 18, 2003, and Ms. Bunnell filed a timely notice of appeal to this Court.

Meanwhile, as the parties filed this flurry of motions, Goodales and Langenbergs entered into a confidential settlement agreement. In October 2002, Ms. Bunnell filed a motion to require Goodales to disclose the terms of this agreement. In her motion, Ms. Bunnell alleged Goodales and

Langenbergs had "settled their differences for a substantial amount of money"; that Goodales had retained the real property; that the settlement was inconsistent with the theory of rescission; and that Goodales and Langenbergs should be required to disclose the terms of the settlement. The trial court denied Ms. Bunnell's motion in June 2003, deferring disclosure pending the perfection of an appeal by Ms. Bunnell or execution on the judgment by Goodales. However, the trial court did order that Ms. Bunnell was entitled to know any amounts paid toward the judgment by other Defendants. In November 2003, having perfected her appeal to this Court, Ms. Bunnell renewed her motion to compel disclosure of the settlement agreement. Following a hearing on the matter, the trial court denied Ms. Bunnell's renewed motion. However, the trial court granted Ms. Bunnell's motion that the agreement be included in a supplemental record filed under seal in this Court.

Upon review of the record filed in this Court, however, we were not satisfied that this was a proper matter for entry of judgment pursuant to Rule 54.02. Following several orders from this Court, response by the parties, and review in the trial court, in January 2007 we ordered the parties to move the trial court for entry of a final order disposing of Langenberg's 2001 motion for new trial and entering final judgment in the entire matter. The trial court entered final judgment in February 2007. We now affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### *Issues Presented*

Goodales present the following issues, as we slightly restate them, for our review:

(1)      Whether the trial court erred by not applying the Local Rules of Court by denying Goodales' motion to strike Ms. Bunnell's post trial motion for judgment in accordance with motion for directed verdict or, in the alternative, motion to alter or amend the judgment, or in the alternative, motion for new trial.

(2)      Whether the trial court erred in denying Goodales' motion for directed verdict and allowing the issue of whether Ms. Bunnell was an independent contractor to be submitted to the jury.

(3)      Whether the evidence preponderates against the jury's determination that Ms. Bunnell was an independent contractor.

Ms. Bunnell presents numerous issues for our review. These issues, as we perceive them, are:

(1)      Whether the jury instructions were so confusing and inconsistent as to require reversal.

-4-

(2)     Whether the trial court erred by awarding punitive damages in an action for rescission.

(3)     Whether the trial court erred by excluding evidence of advice given to Ms. Bunnell by legal counsel that she was not required to disclose certain repairs made prior to sale of the property to Goodales.

(4)     Whether the trial court erred by limiting Ms. Bunnell's examination of witnesses.

(5)     Whether the trial court erred by not granting Ms. Bunnell's motion for directed verdict on the issue of punitive damages where there was no clear and convincing evidence of intentional misrepresentation or fraud.

(6)     Whether the trial court erred by excluding Goodales' sworn pleadings as evidence to impeach and to show Ms. Bunnell's intent, knowledge, and state of mind.

(7)     Whether the judgment against Ms. Bunnell should be vacated where the settlement between Goodales and Langenbergs results in accord and satisfaction or an election of the remedy of damages.

(8)     Whether the trial court abused its discretion by not ordering disclosure of the settlement agreement between Goodales and Langenbergs.

(9)     Whether the trial court erred by awarding attorney's fees against Ms. Bunnell for the contract action.

### *Analysis*

We begin our analysis of the issues raised on appeal with the issues presented by Goodales with respect to their claims against Crye-Leike. The Goodales assert the trial court erred by not granting their motion for directed verdict with respect to Crye-Leike and that the preponderance of the evidence does not support the jury's finding that Ms. Bunnell was an independent contractor. When determining whether to grant a motion for directed verdict, the trial court must look to all the evidence, taking the strongest legitimate view of it in favor of the opponent of the motion, disregarding countervailing evidence, and drawing all reasonable inferences in the opponent's favor. The motion must be denied if there is any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the evidence as a whole. *Potter v. Tucker*, 688 S.W.2d 833, 835 (Tenn. Ct. App. 1985)(citations omitted).

To hold an employer liable for the acts of an employee, the plaintiff must demonstrate that a master-servant relationship existed between the wrongdoer and the employer at the time the injury

-5-

occurred and with respect to the transaction out of which the injury arose. *Winford v. Hawissee Apartment Complex*, 812 S.W.2d 293, 297 (Tenn. Ct. App. 1991)(citations omitted). The party advancing the argument that the relationship existed bears the burden of proof on the issue. *Id.* (citing 11 Tenn. Jur., Evidence, § 49). The plaintiff carries the burden of proving all elements of his theory of recovery and the facts alleged in the complaint. *Id.* "The burden of proof rests on him who affirms, not on him who denies." *Id.* at 295 (quoting *Galbreath v. Nolan*, 429 S.W.2d 447 (Tenn. Ct. App. 1967)).

The courts have enunciated several tests for determining whether a relationship is that of employer-employee or whether an independent contractor status exists. These are "(1) right to control conduct of work, (2) right of termination, (3) method of payment, (4) whether or not the worker furnishes his own helpers, (5) whether or not the worker furnishes his own tools, (6) self scheduling of working hours and (7) freedom to render services to other entities." *E.g., Stephens v. Leamon*, No. 03S01-9707-CH-00091, 1998 WL 474166, at *3 (Tenn., Sp. Workers' Comp., Aug. 10, 1998)(citing *Cromwell Gen. Contractors, Inc. v. Lytle*, 439 S.W.2d 598 (Tenn. 1969)). These tests, however, "are not absolute and must not be applied abstractly." *Id.* Further, no one test, standing alone, is conclusive. *Id.* (citing *Curtis v. Hamilton Block Co.*, 466 S.W.2d 220 (Tenn. 1971)). Although the "right to control" is the primary test, it is not exclusive, and the entire work relationship must be examined. *Id.* (citing *Lindsey v. Smith & Johnson, Inc.*, 601 S.W.2d 923 (Tenn. 1980)).

In this case, Crye-Leike, filed a motion for summary judgment and statement of undisputed facts clearly presenting evidence that Ms. Bunnell was an independent contractor. It asserted, *inter alia*, that Ms. Bunnell was responsible for substantial costs related to her activities as a licensed real estate agent; that Crye-Leike did not provide Ms. Bunnell the instruments and tools required to conduct business; that Ms. Bunnell determined her own work schedule and mode and manner of sales; and that Ms. Bunnell controlled the manner in which her work was conducted. We find no error in the trial court's determination that the question of whether Ms. Bunnell was an employee of Crye-Leike or an independent contractor was a question of fact properly submitted to the jury.

Goodales also assert the jury verdict on this question must be set aside because it is not supported by a preponderance of the evidence. However, our standard of review in a jury matter is the material evidence standard. On appeal from a jury trial, we will not set aside the jury's findings of fact unless there is no material evidence to support the verdict. *Childress v. Union Realty Co.*, 97 S.W.3d 573, 576 (Tenn .Ct. App.2002); Tenn. R. App. P. 13(d). Upon review, this Court will not re-weigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party, and discard evidence to the contrary. *Id.* We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id.* Upon review of the substantial record in this case, we find material evidence to support the jury's determination that Ms. Bunnell's relationship with Crye-Leike was that of an independent contractor. We affirm on this issue.

We finally address Goodale's assertion that the trial court erred by failing to apply the Shelby County Local Rules of Court to strike Ms. Bunnell's post-trial motions. The trial court may exercise its discretion when applying local rules of court. *See Robinson v. Currey*, 153 S.W.3d 32, 41-42 (Tenn. Ct. App. 2004). In light of the procedural history of this case, we cannot say the trial court abused its discretion in denying Goodales' motion to strike Ms. Bunnell's post-trial alternative motions for failure to comply with the local rules. We affirm on this issue and now turn to the issues raised by Ms. Bunnell.

## Jury Instructions

Ms. Bunnell contends the trial court's instructions to the jury were confusing and inconsistent and that the verdict must, therefore, be reversed and the matter remanded for a new trial. She also asserts the verdict form1) failed to charge causation or proper damages as to a tort claim against the realtor; 2) set out only one element of the tort of misrepresentation in each question, although the trial court instructed the jury regarding all the elements; 3) misstated the law because it did not contain the benefit of the bargain damages, the proper remedy for misrepresentation, but only offered the option of return of the purchase money, amounts which the agent did not receive 4) allowed the jury to determine whether punitive damages should be assessed when the only remedy sought by Goodales was rescission. She further asserts that the discrepancies between the trial court's charge and the verdict form are unduly confusing and inconsistent, and that the verdict form is deficient where it fails to require a finding of proximate cause. Ms. Bunnell's argument, as we understand it, is that the jury verdict form, insofar as it addresses misrepresentation, is improper where the remedy sought by Goodales was not damages, but rescission.

The trial court's instructions guide the jury in its deliberations. The instructions must be plain and understandable, and must inform the jury of each applicable legal principle. *Wielgus v. Dover Indus.*, 39 S.W.3d 124, 131 (Tenn. Ct. App. 2001). They must also reflect the theories that are supported by the parties' pleadings and proof, as well as the parties' claims and defenses. *Cole v. Woods*, 548 S.W.2d 640, 642 (Tenn. 1977). Jury instructions must be correct and fair as a whole, although they do not have to be perfect in every detail. *Wielgus*, 39 S.W.2d at 131. Upon review, we read a trial court's instructions to the jury in their entirety and in context of the entire charge. *See id.* Additionally, where the trial court's instructions clearly and definitely set forth the elements upon which liability must be based, the failure to recite each element in the verdict form will not render the verdict invalid. *State v. Faulkner*, 154 S.W.3d 48, 62 (Tenn. 2005).

The jury verdict form in this case includes three separate questions requiring the jury to determine whether Martha Lanbengerg, Charles Langenberg, and Ms. Bunnell, independently, were "liable to Mr. and Mrs. Goodale for intentional misrepresentation of a past or present fact under the law and facts of this case[.]" The verdict form then required the jury to determine whether the Goodales could be made whole by an award of monetary damages. It next asked the jury to find whether "Goodales can only be made whole by rescission of the contract." In its instructions to the jury, the trial court stated that the Goodales sought damages stemming from misrepresentation and enunciated the elements of misrepresentation, including the element of reliance. The court then

informed the jurors of the statutory duties imposed on a real estate agent and the disclosure and disclaimer requirements imposed by Tennessee Code Annotated § 66-5-202. (2086-88) The trial court also instructed the jury to "grant the remedy that will reasonably compensate the Goodales." The court stated

> The basic rule of damages for fraud is that the injured party should be made whole by being compensated for the actual injuries sustained by placing him or her in the same position that he or she would have occupied had the wrongdoer performed and the fraud had not occurred.
>
> If you find that the defendants committed fraud the law provides that the Goodales may void or rescind the contract as if it never existed. The law provides that if money damages alone can make the Goodales whole then [rescission] of the contract should not be granted.

Read together as a whole, we cannot say the jury instructions, combined with the verdict form, were confusing. The trial court's instructions clearly laid out the elements of misrepresentation and instructed the jury that rescission was an appropriate remedy only where damages would not make a plaintiff whole. The verdict form required the jury to determine whether each Defendant had made such misrepresentations, and to determine whether monetary damages would make Goodales whole. Finally, the verdict form did not offer only the option of the return of the purchase money, but required the jury to determine whether rescission was an appropriate remedy. Reading the jury instructions and verdict form together, we find no reversible error.

The question of the propriety of the verdict form with respect to punitive damages, as we perceive it, restates the issue of whether punitive damages may be recovered in an action for rescission. This issue is addressed below.

### Punitive Damages

We next turn to the punitive damages award in this case. In addressing this award, we first examine whether, as a matter of law, punitive damages may be awarded in an action for rescission. We next turn to Ms. Bunnell's assertion that the trial court erred in excluding evidence relevant to the issue of intent. Finally, we examine whether the award is supported by clear and convincing evidence.

*Availability of Punitive Damages in an Action for Rescission*

Ms. Bunnell asserts that the question of punitive damages should not have been submitted to the jury where the remedy sought by Goodales was rescission and not damages arising from tort. She asserts that, as a matter of law, punitive damages may not be awarded absent an award of compensatory damages and that, because she was not a party to the contract, punitive damages may not be assessed against her. We disagree.

-8-

Punitive damages may be awarded to punish a defendant for wilful wrongful conduct and to deter others from engaging in similar conduct. *Hutchison v. Pyburn*, 567 S.W.2d 762, 764 (Tenn. Ct. App. 1977). They may be awarded in actions involving "fraud, malice, gross negligence, or oppression, or in similar cases involving wilful misconduct" and "relate to the nature of the defendant's actions in inflicting or causing the injury rather than to the extent of the injury that results." *Id.* (citations omitted). In *Hutchison*, we noted that, although there can be no cause of action for punitive damages alone without "actual damages," actual damages are not strictly limited to compensatory damages. *Id.* at 765-66. Rather, punitive damages may be awarded in an action for equitable rescission and incidental damages when the basis of rescission is common law fraud. *Id.* at 766. Additionally, although a plaintiff generally must elect between inconsistent remedies and may not at the same time repudiate a contract and claim its benefits, there is no inconsistency between a claim for rescission of a contract and one for fraud in its procurement. *Garrett v. Mazda Motors of America*, 844 S.W.2d 178, 180 (Tenn. Ct. App. 1992)(citations omitted). Accordingly, a claim for rescission is not inconsistent with one for punitive damages.

In *Seaton v. Lawson Chevrolet-Mazda*, the Tennessee Supreme Court observed that the *Hutchison* court had correctly held that punitive damages may be awarded in a suit for equitable rescission of a contract when "the plaintiff can demonstrate the requisite degree of bad conduct and intent on the part of the defendant." *Seaton v. Lawson Chevrolet-Mazda, Inc.*, 821 S.W.2d 137, 138 (Tenn. 1991). The *Seaton* court further held that punitive damages may be awarded when rescission is awarded pursuant to the Uniform Commercial Code. *Id.*

*Admission of Evidence*

We next turn to Ms. Bunnell's issues with respect to the trial court's determinations on evidentiary matters. Ms. Bunnell asserts the trial court erred in Phase I of the trial by excluding the testimony of real estate attorney Lathem Oates (Mr. Oates) that she was not statutorily required to disclose certain repairs made prior to sale of the property to Goodales. Ms. Bunnell asserts that, even assuming the trial court correctly determined that Mr. Oates' testimony did not impact what she knew about the condition of the real property, his testimony could clearly reflect on her intent and lack of malice. Ms. Bunnell argues that Mr. Oates' proffered testimony that he had advised her that, under the Tennessee Code, she was not required to disclose prior repairs to the home made in accordance with the advice of a licensed professional "clearly stands in stark contrast to inferences of intentional conduct." The Goodales, on the other hand, argue that the trial court did not exclude Mr. Oates as a witness in Phase I of the trial, but properly excluded testimony regarding Ms. Bunnell's "advice of counsel" defense regarding her statutory obligations.

Upon review of the record, the disputed issue, as we perceive it, is whether the trial court correctly excluded Mr. Oates testimony regarding his advice to Ms. Bunnell with respect to what she was required to disclose under the Tennessee Code. The code provides:

> With regard to transfers described in § 66-5-201, the owner of the residential property
> shall furnish to a purchaser one of the following:

(1) A residential property disclosure statement in the form provided in this part regarding the condition of the property, including any material defects known to the owner. Such disclosure form may be as included in this part and must include all items listed on the disclosure form required pursuant to this part. The disclosure form shall contain a notice to prospective purchasers and owners that the prospective purchaser and the owner may wish to obtain professional advice or inspections of the property. The disclosure form shall also contain a notice to purchasers that the information contained in the disclosure are the representations of the owner and are not the representations of the real estate licensee or sales person, if any. The owner shall not be required to undertake or provide any independent investigation or inspection of the property in order to make the disclosures required by this part; or

(2) A residential property disclaimer statement stating that the owner makes no representations or warranties as to the condition of the real property or any improvements thereon and that purchaser will be receiving the real property "as is," that is, with all defects which may exist, if any, except as otherwise provided in the real estate purchase contract. A disclaimer statement may only be permitted where the purchaser waives the required disclosure under subdivision (1). If the purchaser does not waive the required disclosure under this part, the disclosure statement described in subdivision (1) shall be provided in accordance with the requirements of this part.

Tennessee Code Annotated § 66-5-202(2004).

A real estate licensee representing an owner of residential real property as the listing broker has a duty to inform each such owner represented by that licensee of the owner's rights and obligations under this part. A real estate licensee representing a purchaser of residential real property or, if the purchaser is not represented by a licensee, the real estate licensee representing an owner of residential real estate and dealing with the purchaser has a duty to inform each such purchaser of the purchaser's rights and obligations under this part. If a real estate licensee performs those duties, the licensee shall have no further duties to the parties to a residential real estate transaction under this part, and shall not be liable to any party to a residential real estate transaction for a violation of this part or for any failure to disclose any information regarding any real property subject to this part. *However, a cause of action for damages or equitable remedies may be brought against a real estate licensee for intentionally misrepresenting or defrauding a purchaser. A real estate licensee will further be subject to a cause of action for damages or equitable relief for failing to disclose adverse facts of which the licensee has actual knowledge or notice. "Adverse facts" means conditions or occurrences generally recognized by competent licensees that significantly reduce the structural integrity of improvements to real property, or present a significant health risk to occupants of the property.*

Tennessee Code Annotated § 66-5-206(2004)(emphasis added).

The appellate court affords the trial court wide discretion regarding the admissibility of evidence and will not overturn the trial court's determination absent an abuse of that discretion. *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d 849, 857 (Tenn. Ct. App.1999). Rule 401 of the Tennessee Rules of Evidence provides:

"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 402 provides:

All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible.

Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless preparation of cumulative evidence.

Read together, the Tennessee Rules of Evidence reflect the policy that all evidence that meets the test for relevancy under Rule 401 is admissible unless explicitly excluded on constitutional grounds, by statute, by the rules themselves, or where the danger of unfair prejudice, confusion, misleading the jury, or unnecessary delay outweighs the probative value of the evidence. *Richardson v. Miller*, 44 S.W.3d 1, (Tenn. Ct. App. 2000). Additionally, we have observed that the plain language of the rules "strongly suggests" that when the balance between the evidence's probative value and any prejudicial effect is close, the evidence should be admitted. *Id.* at 21 (citing See Neil P. Cohen, et al., Tennessee Law of Evidence § 403.3, at 152 (3d ed. 1995)). Therefore, excluding relevant evidence under rule 403 "is an extraordinary step that should be used sparingly." *Id.*

In this case, the trial court determined that Mr. Oates' testimony was not relevant to the question of whether Ms. Bunnell knowingly misrepresented the condition of the home to Goodales. The court observed that, in the context of an action based on intentional fraud, "whatever the attorney told [Ms. Bunnell] doesn't change [what Ms. Bunnell knew to be the condition of the home]." Although we agree with the trial court that Mr. Oates counsel does not alter the fact that Ms. Bunnell was aware of repairs made to the home, we agree with Ms. Bunnell that this testimony is relevant to the question of whether punitive damages were justified in this case. Further, in light of the high degree of evidence required to sustain an award of punitive damages, evidence tending to reflect on the defendant's intent and knowledge should be admitted for consideration by the jury.

The Tennessee Supreme Court set out the elements to be considered in a claim for punitive damages in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). The *Hodges* court noted that, in Tennessee, punitive damages historically were permissible in cases that involved "fraud, malice, gross negligence, oppression, evil motives, conscious indifference, and reckless conduct implying 'disregard of social obligations.'" *Id.* at 900-901 (citing *See Inland Container Corp. v. March*, 529 S.W.2d 43, 45 (Tenn. 1975)). In *Hodges*, the supreme court refined the definition of wrongs that justified punitive damages, holding that the availability of punitive damages should be restricted "to cases involving only the most egregious of wrongs." *Id.* at 901. The court stated that, in imposing this restriction, it sought "to avoid 'dull[ing] the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct.'" *Id.* (quoting *Tutle v. Raymond*, 494 A2d 1353,1361 (Me. 1985))(alteration in the original). The *Hodges* court held that, henceforth, a Tennessee court may "award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Id.*

The *Hodges* court defined intentional action as involving "the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* (citing Cf. T.C.A. § 39-11-302(a) (1991) (criminal definition of "intentional"). It defined fraudulent conduct as that involving intentional misrepresentation of an existing, material fact or "produces a false impression, in order to mislead another or to obtain an undue advantage," and (2) by which "another is injured because of reasonable reliance upon that representation." *Id.* (citation omitted). The court defined malicious action as that "motivated by ill will, hatred, or personal spite," and stated that "a person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id.* (citing Cf. T.C.A. § 39-11-302(c) (1991) (criminal definition of "reckless")). The *Hodges* court further held that punitive damages may only be awarded where the plaintiff has proven that the defendant acted intentionally, fraudulently, maliciously, or recklessly by clear and convincing evidence. It stated, "[t]his higher standard of proof is appropriate given the twin purposes of punishment and deterrence: fairness requires that a defendant's wrong be clearly established before punishment, as such, is imposed; awarding punitive damages only in clearly appropriate cases better effects deterrence." *Id.* The court defined clear and convincing evidence as that "in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* n3.

In this case, the proffered testimony of Mr. Oates is relevant to Ms. Bunnell's intent with respect to her obligations and duties. In his deposition, Mr. Oates testified that he had advised Ms. Bunnell that it was not necessary for her to disclose the prior repairs made to the home if the file report from the engineer indicated the necessary repairs had been satisfactorily completed. Although the weight of the testimony is a matter to be determined by the jury, it was clearly admissible and relevant to the question of intent.

Ms. Bunnell additionally asserts the trial court erred by not permitting the use of prior complaints filed by the Goodales and nonsuited as substantive evidence and to impeach. Her

argument section on this issue consists of three sentences and cites no law. We consider the issue waived.

Finally, Ms. Bunnell asserts the trial court erred by disallowing her to question witnesses whether, in their opinion, a lay person could rely on the opinion of an engineer that the house was structurally sound. Ms. Bunnell contends the trial court committed reversible error by not allowing her to question several engineers regarding whether she was justified in relying on the opinion of Bryan Stephens (Mr. Stephens), a structural engineer hired by Ms. Bunnell after receiving conflicting reports by other engineers, that "once these (suggested) repairs . . . [were] made this house . . . [was] structurally sound and . . . compl[ied] with good engineering practices and . . . [met] local codes." Although we agree with Ms. Bunnell that such testimony was relevant to the question of intent, because the engineering reports are included in the record, we do not find its exclusion to be reversible error.

*Evidence Supporting the Punitive Damage Award*

Ms. Bunnell asserts the trial court erred in not directing a verdict denying punitive damages. Her argument, as we perceive it, is that clear and convincing evidence does not support a finding of intentional fraud where Ms. Bunnell hired an independent engineer, sought the advice of legal counsel, and justifiably relied on the advice of both professionals. Thus, we turn to whether clear and convincing evidence supports an award of punitive damages in this case.

As noted above, clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* In describing what constitutes clear and convincing evidence, this Court has stated:

> [a]lthough it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. In order to be clear and convincing, the evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not.

*In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App.2000)(citations omitted).

Upon review of the record in this case, including the engineering reports available to Ms. Bunnell as of May 1996, we hold that the punitive damage award was not supported by clear and convincing evidence. Clearly, this home had undergone repairs as recommended by structural engineers. However, the engineering reports available to Ms. Bunnell in May 1996 clearly indicated that, once the repairs had been made, the house would be considered structurally sound. The

engineering reports indicated that, at the time of sale, it was not foreseeable to Ms. Bunnell that Goodales would experience further structural problems. On the contrary, structural engineers unambiguously advised her that the house could be considered structurally sound. Further, an inspector hired by Goodales to inspect the home prior to closing apparently found no evidence of structural problems with the home, and the inspection report obtained in 1999 cannot be utilized to determine what Ms. Bunnell knew at the time of closing in 1996.

The wiser course of action would have been to reveal the entire history of repairs made to the home. However, in light of the totality of the evidence and of the parameters established in *Hodges*, a finding that Ms. Bunnell's conduct was so intentionally egregious as to justify the award of punitive damages is not supported by clear and convincing evidence in this case. We accordingly reverse the award of punitive damages.

### The Settlement Agreement

We next turn to Ms. Bunnell's assertion that the judgment against her should be vacated where a post-trial settlement between Goodales and Langenbergs represents an election of the remedy of damages by Goodales or, in the alternative, accord and satisfaction of the judgment. In November 2001, Goodales and Langenbergs entered into a confidential settlement under which Goodales agreed to release Langenbergs from further liability for the judgment entered against them in exchange for payment in the amount of $225,000. The settlement agreement further provided that, although Langenbergs would be released from payment of future sums, they would remain named defendants in the matter until final disposition of the case against Ms. Bunnell and Crye-Leike; and that the agreement would not be disclosed and that violation of the confidentiality clause would render the disclosing party "liable for all consequential damages suffered by the other party." Also in November 2001, Goodales and Langenbergs entered into a confidential conditional sales contract under which Langenbergs agreed to convey the property at dispute in this lawsuit to Goodales for the sale price of one dollar. The sales contract provided that Langenbergs would quit claim the property back to Goodales within thirty days of obtaining title. In January 2006, the Langenbergs executed a quit claim deed conveying the property to Goodales in consideration of one dollar.

Although we cannot agree with Ms. Bunnell that the settlement represents an election of remedies *per se* where it was entered into post-trial and after judgment had been entered, we do agree that the total value of monies and property received by Goodales must reduce the judgment amount for which Langenbergs and Ms. Bunnell are jointly and severally liable. The rescission judgment included repayment of the purchase price of $277,260.43; repayment of moving expenses in the amount of $1,600; and pre-judgment interest in the amount of 8.5% dating from June 26, 1996. Of course, because the remedy was rescission of the sales contract, the judgment also necessitated conveyance of the property back to Langenbergs. Additionally, the trial court entered judgment jointly and severally against Langenbergs and Ms. Bunnell for costs in the amount of $24,683.91, and attorney's fees in the amount of $115,740. Thus, to satisfy the total judgment, Langenbergs and Ms. Bunnell were jointly and severally liable for payment of $419,284.34, plus pre-judgment and

post-judgment interest on $278,860.43. Ultimately, by virtue of the settlement with Langenbergs, Goodales received an amount equivalent to $225,000 plus the value of the property.

We agree with Ms. Bunnell that the value of the property must be considered in evaluating the total value received by Goodales. Rescission is an equitable remedy designed to restore the parties to the position they would have occupied had the transaction not occurred. *E.g., Lamons v. Chamberlain*, 909 S.W.2d 795, 800 (Tenn. Ct. App. 1993)(citations omitted). Thus in this case, where retention of the disputed property by the Goodales, in addition to the refund of a significant portion of the sales price, was part of an agreed settlement with Langenbergs, and where the judgment was entered jointly and severally against Langenbergs and Ms. Bunnell, the value of that property must be considered in determining the amount by which the total liability must be reduced. The equities in light of the totality of the circumstances in this case demand no less.

We cannot, however, determine whether this value results in accord and satisfaction of the joint and several judgment liability, plus interest on $278,860.43, because the value of the property at the time of settlement is not stated in the record. Accordingly, we remand to the trial court for this determination. Upon remand, we instruct the trial court to reduce the total amount for which Langenbergs and Ms. Bunnell remain jointly and severally liable ($419,284.34 plus 8.5% interest on $278,860.43 from June 1996 through May 4, 2001, plus 10% interest on $278,860 from May 4 through the November 2001 settlement date) by $225,000 plus the value of the property at the time of settlement, reduced by $1. Additionally, in light of our holding below with respect to the award of attorney's fees, this liability must be further reduced by $115,740. In light of this holding, we find it unnecessary to address whether the trial court erred by denying Ms. Bunnell's motion to disclose the settlement agreement.

### Award of Attorney's Fees

Finally, we turn to Ms. Bunnell's assertion that the trial court erred by assessing attorney's fees against her where they are not provided by statute or contract. Goodales, on the other hand, cite *Hutchison v. Pyburn*, 567 S.W.2d 762 (Tenn. Ct. App. 1977), for the proposition that attorney's fees are permissible in a claim for rescission based on fraud. Goodales assert the plaintiffs in *Hutchison* received a judgment for rescission, incidental damages, punitive damages, and attorney's fees and, following appeal, recovered a judgment that included attorney's fees.

Generally, an award of attorney's fees is not appropriate in the absence of a statutory or contractual provision. *State v. Brown & Williamson Tobacco Co.*, 18 S.W.3d 186 (Tenn. 2000). Thus, attorney's fees are not appropriate when rescission of a contract is predicated on common law fraud and deceit. *E.g., Fayne v. Vincent*, No. E2003-01966-COA-R3-CV, 2004 WL 1749189, at *5 (Tenn. Ct. App. Aug. 5, 2004)(*no perm. app. filed*). Further, in *Hutchison*, appellants apparently did not raise the issue of whether the award of attorney's fees was improper, and we did not address it. Rather, our analysis in that case was confined to the question of whether, as a matter of law, punitive damages may be awarded in an action for equitable rescission. *Hutchison*, 567 S.W.2d at 764. Finally, we disagree with Goodales that this case presents a special circumstance where equity

demands the recovery of attorney's fees. We accordingly reverse the award of attorney's fees in this case.

## Holding

We reverse the award of punitive damages and the award of attorney's fees in this case. The total remaining liability for the refund of the purchase price of $277,260.43, plus repayment of moving expenses in the amount of $1,600, plus pre-judgment interest in the amount of 8.5% dating from June 26, 1996 through May 4, 2001, plus post-judgment interest of 10% dating from May 4, 2001 through the settlement date of November 2001, must be reduced by $225,000 plus the value of the property on the date of the 2001 settlement, less $1. Remaining issues are pretermitted as unnecessary in light of this holding. Cost of this appeal are taxed to the Appellees, James E. Goodale and Hazel F. Goodale.

_____
DAVID R. FARMER, JUDGE