# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 24, 2012 Session

## SUSAN DANIEL v. BRITTANY SMITH

**Appeal from the Circuit Court for Coffee County**
**No. 35636     L. Craig Johnson, Judge**

---

**No. M2011-00830-COA-R3-CV - Filed September 28, 2012**

---

In this negligence case, the jury returned a verdict in the amount of the plaintiff's medical evaluation and treatment immediately following the accident as well as pain and suffering. We find material evidence to support the verdict and, therefore, affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Henry S. Queener, Nashville, Tennessee, for the appellant, Susan Daniel

Gerald L. Ewell, Jr., Tullahoma, Tennessee, for the appellee, Brittany Smith

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 2006, a car driven by Susan Daniel was struck from behind by a car driven by Brittany Smith. Daniel filed this negligence lawsuit against Smith in February 2007.

The case was tried before a jury on September 29 and 30, 2010. Smith admitted liability for the accident, but denied that her negligence caused the injuries and losses claimed by Daniel. At trial, the depositions of Daniel's treating physicians, Dr. Melvin Law and Dr. Brandon Downs, were read into evidence.

Orthopedic surgeon Dr. Law began treating Daniel on January 3, 2006 for neck, back, and leg pain; he performed neck surgery on her in late February 2006.[1]  Dr. Law saw her again on March 6, 2006, a few days after the car accident at issue in this case, and she reported a lot of neck pain.  On April 25, 2006, Daniel also began reporting right shoulder pain.  As to Smith's right shoulder pain, Dr. Law opined as follows:

[B]ased on the history, and you know, having the shoulder pain after the second accident, based on that history, or based on those findings and in that history, the more probable than not, to a reasonable degree of medical certainty, the rotator cuff or the shoulder symptoms would have related back to that accident [in March 2006].

When Daniel's shoulder symptoms persisted, Dr. Law referred her to Dr. Downs, an orthopedic surgeon in his practice who specialized in shoulder problems.

Dr. Downs first saw Daniel in August 2006.  She reported right shoulder pain since a car accident on December 4, 2004.  When asked for his opinion concerning which car accident caused Daniel's shoulder problems, the December 2004 accident or the March 2006 accident, Dr. Downs gave the following response:

I'm not sure that can be answered to a reasonable degree of medical certainty. I mean, I can only tell you what the patient told me as far as the chronicity of her pain.  The second accident that you referred to, at least I didn't document at that office visit whether we discussed that accident or not.  I can tell you that, you know, my record that was created at this office visit [in August 2006] stated that that's what she told me was the time that her pain began [December 2004].

He subsequently noted that "the patient tells me when the pain began" and "I don't have a way to verify the truthfulness of that [the patient's] statement."  Dr. Downs performed surgery on Daniel's right shoulder.

The plaintiff also read into evidence the deposition of Dr. David West, an orthopedic surgeon who reviewed Daniel's medical records and offered his opinion as to the reasonableness and necessity of the medical treatment received by Daniel and the charges for that treatment.  He summarized the medical records he had reviewed and opined that the treatment rendered was causally related to the March 2006 accident.  Dr. West stated that the total charges for Daniel's treatment related to the March 2006 accident were $59,021.50.  He

---

[1]Daniel was in a car accident on December 4, 2004 in which her car struck a cow.

opined that Daniel's further neck surgery in May 2007 related back to the December 2004 accident, not to the accident in March 2006.

The final witness for the plaintiff's case was Daniel herself. On cross-examination, defense counsel questioned her about the treatment she received at the hospital immediately after the accident on March 2, 2006:

> Q. (BY MR. EWELL) When you went after the accident with Ms. Smith you got some bills, didn't you?
> A. Uh, yeah, I think I did.
> Q. $466.50 for the ambulance? Does that look about right?
> A. Uh, probably, but I really don't know the exact amounts. I mean, the bill looks right. It does.
> Q. $466.50, that's your recollection of that, right?
> A. Yeah.
> Q. And then they charged you to do the x-rays, which was a little over $200 there, 227?
> A. I don't know. I mean, it says that it is.
> Q. Well, this is your name, isn't it?
> A. It is, yes.
> Q. Do you remember getting a bill like this?
> A. I remember getting bills, but as far as the amounts, I don't remember what the amount would be.
> Q. But the amount of that bill is 227, isn't it?
> A. Okay. That's what it says.
> Q. Okay. Then you got a bill for the hospital, 2090?
> A. Uh-huh. That's what it say[s].
> Q. Do you remember getting that? And then you got a bill–You went to see Dr. Law to check your neck too, didn't you.
> A. Yes, I did.
> Q. And he charged you $99, I believe, for going on 3/6, which would be after the accident. Charged you $99, is that correct?
> A. That's what it says.
> Q. And then the doctor that saw you at the emergency room here at Manchester charged you 225?
> A. Uh-huh, that's what's on there.
> Q. Okay. All that adds up to slightly over 32, I believe, $3,246.50, to get checked out as a result of this accident with Ms. Smith? Those numbers–
> A. I can't add all those in my mind right now.
> Q. Okay, in your head. I can't either, but that's about right, isn't it?

A.  It sounds like it, yeah.

The defense did not put on any proof of its own.

At the close of the proof, the trial court granted the plaintiff's motion for a "directed verdict" regarding the reasonableness and necessity of the medical charges incurred by Daniel for treatment.  The jury was instructed to presume that the medical expenses in the amount of $59,021.50 were "reasonable and necessary *if causally related to the accident of March 2, 2006*."  (Emphasis added).  Thus, it was for the jury to determine whether the treatment and expenses were caused by the March 2006 accident.  The jury returned a verdict for damages in the amount of $3,746.50 — $3,246.50 for medical expenses and $500.00 for past loss of enjoyment of life.

The court entered an order of judgment on the jury verdict on October 25, 2010 and a judgment on November 2, 2010.  The plaintiff filed a motion to alter or amend, which the court denied in an order entered on March 16, 2011.  In this order, the court made the following pertinent findings:

> The Court finds that a reasonable theory the jury could have found is that the plaintiff's shoulder injury and the resulting treatment were not caused by the March 6, 2000, accident.  There is proof in the record that the plaintiff may have related her complaint to a previous accident even though the plaintiff would argue otherwise.  Respectfully, the jury must have chosen to reject Dr. West's testimony to the contrary.  Clearly the jury only chose to award plaintiff her expenses for her immediate post-accident examination to determine if she had been injured.

STANDARD OF REVIEW

With respect to a jury verdict, our review is limited to a determination of whether there is any material evidence to support the verdict.  *Goodale v. Langenberg*, 243 S.W.3d 575, 583 (Tenn. Ct. App. 2007); *see* Tenn. R. App. P. 13(d).  In reviewing a jury verdict, we take the strongest possible view of the evidence for the prevailing party, discard evidence to the contrary, and allow all reasonable inferences to uphold the verdict.  *Goodale*, 243 S.W.3d at 583.

ANALYSIS

In a negligence action, the plaintiff has the burden of proving the essential elements of duty, breach, injury, cause in fact, and proximate or legal cause.  *Waste Mgmt., Inc. v. S.*

*Cent. Bell Tel. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997). The only issues tried before the jury in this case were causation and damages. The issue on appeal is whether there is material evidence to support the jury's award of $3,746.50 in damages.

Daniel argues that, in light of the instructions given to the jury regarding the reasonableness and necessity of the medical expenses incurred by Daniel, it was not permissible for the jury to enter a verdict for less than $59,021.50 in medical expenses. Daniel asserts that there was no evidence in the record upon which the jury could have based its award for a lesser amount. We cannot agree with this argument.

Daniel emphasizes that Smith did not put on its own expert witnesses. As the trial court stated in its order denying the plaintiff's motion to alter or amend the judgment, however, there was evidence from which the jury could conclude that Daniel's shoulder injury was not caused by the March 2006 accident, and "the jury must have chosen to reject Dr. West's testimony to the contrary." In addition to its assessment of Daniel's credibility as a witness, the jury could base its decision regarding the causation of her injuries upon the following evidence: Daniel's statement on a patient medical history form completed in August 2006 that she had pain in her right shoulder with an injury date of December 4, 2004; medical reports and a letter written by Dr. Downs stating, based upon the history given by the patient, that Daniel's shoulder pain began with the December 2004 auto accident; statement made by Daniel on her application for Social Security disability benefits that her pain (including the pain in her shoulder) began in December 2004; and the medical report of another doctor from May 2005 in which Daniel reported right shoulder and neck pain.

As to the amount of damages, Smith's attorney elicited testimony from Daniel on cross-examination indicating that the amount incurred for her initial examination and evaluation after the March 2, 2006 accident totaled $3,246.50. Thus, there was material evidence upon which the jury could base its award for the expense of immediate post-accident evaluation plus $500 for pain and suffering.

Daniel argues that her position is supported by the case of *Watson v. Payne*, 359 S.W.3d 166 (Tenn. Ct. App. 2011). In *Watson*, a case in which liability was admitted and the trial was limited to the issue of damages, the jury returned a verdict for damages in the amount of zero. *Id.* at 168. The trial court denied the plaintiff's motion for a new trial or for additur. *Id.* There was unrefuted expert testimony that the plaintiff incurred expenses for necessary medical evaluation and treatment immediately following the accident. *Id.* at 169. The appellate court stated the general rule that "a plaintiff in a negligence action is entitled to recover reasonable medical expenses for medical examinations to determine if the plaintiff sustained injuries, even where it is determined that the plaintiff sustained no injury." *Id.* at 170 (citing *Newsom v. Markus*, 588 S.W.2d 883, 887 (Tenn. Ct. App. 1979)). The court

noted that, in reviewing the trial court's decision to deny a new trial or additur, its review was limited to "whether the record contains material evidence to support an award of $0 'as being at or above the lower limit of the range of reasonableness.'" *Id.* (quoting *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980)). The court concluded that the trial court's award of no damages was not within the range of reasonableness since there was no evidence to refute the expert testimony supporting an award of damages at least for the cost of having her injuries evaluated medically. *Id.* at 170-71.

We agree with Smith that the result reached by the trial court in the present case is entirely consistent with the court's reasoning in *Watson*. Here, unlike in *Watson*, the jury returned a verdict compensating the plaintiff for medical expenses incurred immediately after the accident to evaluate the extent of her injuries.

CONCLUSION

We affirm the judgment of the trial court. Costs of appeal are assessed against the appellant, Susan Daniel, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE