IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2021

**IN RE MILEY D.**

**Appeal from the Juvenile Court for Lincoln County**
**No. 19-JC-101       N. Andy Myrick, Judge**
_____

**No. M2020-01416-COA-R3-PT**
_____

This is an appeal from a termination of parental rights case. The trial court determined that two grounds for termination had been established as to Father: abandonment by an incarcerated parent pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv) and a sentence for child abuse pursuant to Tennessee Code Annotated section 36-1-113(g)(5). The trial court further found the termination of Father's parental rights to be in the best interests of the two minor children at issue. Although we reverse one ground for termination found by the trial court, we otherwise affirm its order terminating Father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in part, Reversed in part, and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

W. Garrett Honea, Fayetteville, Tennessee, for the appellant, Derrick D.

Herbert H. Slattery, III, Attorney General and Reporter, and Jordan K. Crews, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

The facts giving rise to this matter initially arose on or about August 25, 2018 when the Department of Children's Services ("DCS") received a referral regarding Miley D. and Stormy B.[1] (hereinafter referred to collectively as "Children"). They were taken into state

---

[1] This Court has a policy of protecting children's identities in parental termination cases by initializing the names of certain persons mentioned.

custody after their mother allowed sexual contact between one of the Children and an adult sexual offender.

A petition to terminate the mother and father's ("Father") parental rights was filed by DCS on October 3, 2019. The mother's parental rights as to the Children were terminated in July of 2020 pursuant to a separate order that is not the subject of this appeal. We therefore restrict our discussion accordingly and tailor our discussion herein to Father.

At the time of the petition, Father was incarcerated in Limestone County, Alabama. Father has been incarcerated since June 13, 2015, after he was indicted on six criminal charges stemming from an incident involving two children who are not the subject of this appeal. The criminal charges included: two counts of attempted murder; two counts of domestic violence; and two counts of aggravated child abuse. Father pleaded guilty to two counts of aggravated child abuse on March 25, 2019 and thereafter received two 20-year sentences to be served consecutively, amounting to a 40-year sentence. At the inception of these proceedings, Father had not visited or paid child support since 2013, two years before his incarceration.

The final hearing as to termination of Father's parental rights was held on September 2, 2020. In its subsequent termination order, the trial court found clear and convincing evidence of both "[a]bandonment by incarcerated parent" and a sentence for child abuse as grounds for termination of Father's parental rights. The trial court also found by clear and convincing evidence that the termination of Father's parental rights was in the best interests of the Children. This appeal followed.

### ISSUES PRESENTED

Father raises two issues for our review on appeal restated slightly as follows:

1. Whether the State proved "abandonment by incarcerated parent" as defined by Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102(1)(A)(iv) by clear and convincing evidence.
2. Whether there is sufficient evidence to support the trial court's finding that termination of his parental rights is in the best interests of the minor children as defined by Tennessee Code Annotated section 36-1-113(i).

### STANDARD OF REVIEW

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010)). Although this right is fundamental and constitutionally protected, it is

not absolute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007). This right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). "[T]he state as *parens patriae* has a special duty to protect minors," *Hawk v. Hawk*, 855 S.W.2d 573, 580 (Tenn. 1993) (quoting *Matter of Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)), and "Tennessee law . . . thus . . . upholds the state's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Id.*

Under Tennessee law, "[w]ell-defined circumstances exist under which a parent's rights may be terminated." *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015). These circumstances are statutorily defined. *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005)). "To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "'Clear and convincing evidence' is 'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Id.* (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). This heightened burden of proof required in parental termination cases "minimizes the risk of erroneous decisions." *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007).

Due to this heightened burden of proof, we will adapt our customary standard of review espoused in Rule 13(d) of the Tennessee Rules of Appellate Procedure:

> First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re Audrey S.*, 182 S.W.3d at 861.

### DISCUSSION

*Grounds for Terminating Father's Parental Rights*

The Tennessee Code sets forth several enumerated grounds for terminating parental rights. Any of these grounds may be relied upon by a trial court in terminating a party's parental rights provided that the termination is in the best interests of the child. *Id.* at 862. In the underlying matter, the trial court relied on two of the statutory grounds: abandonment

as defined by Tennessee Code Annotated section 36-1-102(1)(A)(iv) and a sentence for severe child abuse as defined in Tennessee Code Annotated section 36-1-113(g)(5). For the reasons contained herein, we find that the record contains clear and convincing evidence to warrant a termination on the ground of abandonment by an incarcerated parent, however, we do not find there to be sufficient evidence to support a termination on the ground of a conviction for severe child abuse.

Abandonment by an Incarcerated Parent

In its order, the juvenile court found that Father abandoned the Children pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv). At the time of the filing of the petition in this case, this provision specifically defined abandonment as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv). This Court has previously noted that there exist "distinct tests" for abandonment if the parent is "incarcerated at or near the time of the filing of the termination petition." *In re Audrey S.*, 182 S.W.3d at 865. Here, the appropriate inquiry involves determining whether the parent "has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv).

Incarceration alone is not sufficient to warrant a termination of parental rights under the test referenced above. *In re Audrey S.*, 182 S.W.3d at 866. Instead, "[a]n incarcerated or recently incarcerated parent can be found guilty of abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child." *Id.* Essentially, a parent's incarceration "serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id.* Although not statutorily defined, this Court has previously held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867–68. In determining whether certain conduct constitutes

- 4 -

wanton disregard, we have previously explained that "'a parent's criminal behavior does not automatically constitute wanton disregard for the welfare of a child,' but such behavior 'may constitute such wanton disregard under the appropriate circumstances.'" *In re Johnathan M.*, 591 S.W.3d 546, 555 (Tenn. Ct. App. 2019) (quoting *In re Kierra B.*, No. E2012-02539-COA-R3-PT, 2014 WL 118504, at *8 (Tenn. Ct. App. Jan. 14, 2014)). "When considering whether a parent's criminal conduct constitutes wanton disregard, we consider 'the severity and frequency of the criminal acts.'" *Id.* (quoting *In re Kierra B.*, 2014 WL 118504, at *8).

On appeal, Father contends that the record before the trial court did not contain sufficient evidence to satisfy the test discussed above. Specifically, Father argues that there was no testimony presented at trial that he engaged in any conduct prior to incarceration that exhibited a wanton disregard for the welfare of the Children. In support of this, Father argues that "the trial court only erroneously used his incarceration as not only the 'triggering mechanism', but the entire cause of his wanton disregard."

Based on our review of the record, we cannot agree with Father's contention. Although Father correctly notes that a parent's incarceration may be used only as a triggering mechanism, this mechanism enables the trial court to "determine whether the parental behavior that **resulted in incarceration** is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866 (emphasis added). Here, we note the trial court expressly found that

> [o]n March 25, 2019, the father was convicted of two counts of aggravated child abuse and received a sentence of twenty years per count to serve consecutively for a total effective sentence of forty years. The petition was filed on October 3, 2019, and therefore, the father was incarcerated for more than four months prior to the filing of the petition, and that **prior to his incarceration**, the father engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the children (i.e. committed the crime of aggravated abuse against two other children).

(emphasis added).

It was not inappropriate for the trial court to consider Father's actions in committing aggravated child abuse against two other children in determining whether he engaged in conduct evincing a wanton disregard for the welfare of the Children at issue. This is clearly permitted by statute as section 36-1-102(1)(A)(iv) provides for a determination of whether "the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv). Therefore, we find no issue with the trial court's consideration of Father's actions resulting in his incarceration.

In contending that the clear and convincing evidence standard was not satisfied, Father also argues that "there was no testimony presented in the trial that [Father] engaged in any such behavior," nor was there testimony showing that Father engaged in "drug use, domestic violence, or other illegal activity." However, we find this argument to be without merit. We note our previous statement that certain actions "alone or in combination" may "constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867–68. Accordingly, a single action alone may be sufficient to support a finding of wanton disregard.

Again, the trial court's finding of abandonment was predicated on the fact that "**prior to his incarceration**, the father engaged in conduct . . . that exhibits a wanton disregard for the welfare of the children (i.e. **committed the crimes of aggravated child abuse against two other children**)." (emphases added). In making this determination, the trial court relied on Father's plea agreement. A plea of guilty "is competent evidence as an admission against interest." *In re A.B.*, No. E2016-00504-COA-R3-PT, 2017 WL 111291, at *9 (Tenn. Ct. App. Jan. 11, 2017) (quoting *Grange Mut. Cas. Co. v. Walker*, 652 S.W.2d 908, 910 (Tenn. Ct. App. 1983) (internal citations omitted)). Moreover, "this court has repeatedly held that trial courts considering termination petitions need not look beyond the judgment of conviction." *In re Lavanie L.L.*, No. E2013-00887-COA-R3-PT, 2013 WL 5874709, at *5 (Tenn. Ct. App. Oct. 31, 2013) (citing *In re Audrey S.*, 182 S.W.3d at 877). It is not the duty of this Court to relitigate Father's Alabama criminal case, rather, we look to Father's admitted prior conduct to determine whether it demonstrates a wanton disregard for the welfare of the Children. In analyzing whether the trial court was correct in its finding, we note that "Tennessee courts have recognized 'wanton disregard' in much the same way as Justice Potter Stewart identified pornography: '[we] know it when [we] see it.'" *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *2 (Tenn. Ct. App. June 9, 2015) (quoting *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964) (J. Stewart, concurring)). Here, Father was convicted on two counts of aggravated child abuse, earning two 20-year sentences to be served consecutively, totaling 40 years. The trial court found Father's actions regarding the aggravated child abuse to exhibit a wanton disregard for the welfare of the Children. Not only was the nature of Father's actions particularly egregious, but by partaking in this conduct, Father was well aware of the potential ramifications that may result therefrom. Specifically, by both partaking in this activity and entering into his plea agreement, Father would have realized the negative impact on the Children that may occur due to the longevity of his sentence. As such, due to the nature of Father's pre-incarceration actions, we find this sufficient to warrant a finding of wanton disregard for the Children's well-being and hold that the evidence clearly and convincingly supports the trial court's findings on the ground of abandonment by an incarcerated parent.

<u>Father's Conviction for Severe Child Abuse</u>

The trial court also found a ground for termination existed on the basis that "[F]ather has been sentenced to a total of forty years for severe child abuse." Although Father does not challenge this ground for termination, we must address it because "in an appeal from an order terminating parental right[s], the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 525–26.

Under the version of Tennessee Code Annotated section 36-1-113(g)(5) applicable at the time of the filing of the petition in this matter, a parent's rights could be terminated on the ground that

> [t]he parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child **or any other child residing temporarily or permanently in the home of such parent** or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse as defined in § 37-1-102.

Tenn. Code Ann. § 36-1-113(g)(5) (emphasis added).[2]  The record in the present case reflects that Father previously pleaded guilty to two counts of aggravated child abuse for conduct perpetrated against children in Alabama of "[t]he woman [he] was with" and was sentenced to two separate 20-year sentences to be served consecutively for a total of 40 years. (Tr. at 57) In its order, the trial court found that "[F]ather has been sentenced to a total of forty years for severe child abuse as defined by T.C.A. § 37-1-102, and the Court does find this ground to exist by clear and convincing evidence."  The trial court's order reflects that Father's conduct in this regard was not in relation to the Children at issue in this appeal, nor does it appear to have been related to any sibling or half-sibling of the Children at issue.

---

[2] This provision has since been amended.  Tennessee Code Annotated section 36-1-113(g)(5) currently reads in relevant part as follows:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against a child that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102.

Although we discuss herein that there is insufficient proof to sustain this ground under the former version of the statute, it appears that the changes reflected in the current version of the statute would have eliminated the concern we highlight in our discussion of this ground.

- 7 -

Based on our review of the record, we cannot agree that there exists clear and convincing evidence that the present set of facts trigger the application of section 36-1-113(g)(5). Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Goodale v. Langenberg*, 243 S.W.3d 575, 589 (Tenn. Ct. App. 2007) (quoting *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000)). We again emphasize the governing statute's language noting that, if the child abuse is committed against a child other than the child who is the subject of the petition, or the sibling or half-sibling of said child, the conduct must arise against a "child **residing temporarily or permanently** in the home of such parent." Tenn. Code Ann. § 36-1-113(g)(5) (emphasis added).[3] Here, although there is *some* indication that Father's sentence for severe child abuse may have been for conduct against children who resided with him, we do not find that the record before us presents us with sufficient evidence of this fact to support the establishment of this ground for termination.[4]

Because we do not find there to be clear and convincing evidence in the record on whether Father's sentence was for conduct against a child who resided either temporarily or permanently in his home, we reverse the trial court's termination of his parental rights on this ground.

## *Best Interests of the Children*

"Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 573 (Tenn. Ct. App. 2013) (citing *In re Audrey S.*, 182 S.W.3d at 877). Thus, "[w]hen at least one ground for termination of parental rights has been established, as here, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights" is in the best interests of the Children. *In re Joseph F.*, 492 S.W.3d 690, 706 (citing *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004)).

Tennessee Code Annotated section 36-1-113(i)[5] provides the following set of non-exclusive factors that the trial court shall consider in determining whether termination of a

---

[3] As noted in the previous footnote, this requirement is no longer contained in the current version of the statute.

[4] Moreover, there is nothing in the trial court's order where this particular requirement was expressly considered.

[5] Although not relevant to the issues posed by this particular appeal, we observe that Tennessee Code Annotated section 36-1-113(i) was recently amended by the General Assembly to incorporate additional factors to be considered as part of the best interest analysis under the statute. *See* 2021 Tenn. Pub. Acts, c. 190, § 1. This amended version went into effect on April 22, 2021, well after the trial court's proceedings in this matter. As such, we analyze the best interest factors as they existed at the time of the proceedings in this case.

parent's parental rights is in the child's best interest:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "Ascertaining a child's best interests does not call for a rote examination" of these enumerated factors, and "depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878.

Here, the trial court's order supports the conclusion that it considered the requisite best interests factors enumerated in section 36-1-113(i). The order specifically notes the court's consideration of "all the factors set forth in T.C.A. § 36-1-113" and it "specifically finds by clear and convincing evidence that termination of the father's parental rights is in the best interest of the children." In connection with its consideration of the Children's best interests, the trial court noted that Father is unable to perform his parenting duties as

he is currently serving a 40-year sentence, and Father's conviction on aggravated child abuse further supports that it is in the Children's best interests that his parental rights are terminated.

Based on our review of the record, we affirm the trial court's judgment. The evidence contained in the record clearly and convincingly supports that termination of Father's parental rights is in the best interests of the Children. It is the child's perspective, rather than the parent's, from which we view the best interest inquiry. *Id.* In viewing the present set of facts from the Children's perspective, it is clear that termination of Father's parental rights is in the best interests of the Children. Here, Father is currently serving a 40-year prison sentence in another state. He will not be released until the Children are well into adulthood. "Often, the lack of a meaningful relationship between a parent and child is the most important factor in determining a child's best interest." *In re Cortez P.*, No. E2020-00219-COA-R3-PT, 2020 WL 5874873, at *12 (Tenn. Ct. App. Oct. 2, 2020) (quoting *In re London B.*, No. M2019-00714-COA-R3-PT, 2020 WL 1867364, at *12 (Tenn. Ct. App. Apr. 14, 2020)). Here, Father has neither seen the Children, nor supported the Children, since 2013 – two years before his incarceration began. As such, it has been eight years since Father has been involved in the Children's lives, at which point they were mere toddlers. In light of the foregoing, we conclude that the trial court's termination of Father's parental rights should be affirmed, as the termination is clearly and convincingly in the Children's best interests.

## CONCLUSION

Although we reverse the portion of the trial court's order finding that a ground for termination existed pursuant to Tennessee Code Annotated section 36-1-113(g)(5), the trial court's order terminating Father's parental rights is otherwise affirmed.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE

- 10 -