CROMWELL GENERAL CONTRACTOR, INC., and Aetna
Casualty & Surety Insurance Company, Inc.,
Plaintiffs in Error,

*v.*

ALLEN B. LYTLE, Defendant in Error.

439 S.W.2d 598.

(*Nashville,* December Term, 1968.)

Opinion filed February 14, 1969.

Petition for Rehearing Denied April 18, 1969.

Smith & Sellers, Murfreesboro, for plaintiffs in error.

John R. Rucker and Michael Murphy, Murfreesboro, for defendant in error.

MR. JUSTICE CRESON delivered the opinion of the Court.

Cromwell General Contractor, Inc. appeals to this Court from an adverse judgment of the Circuit Court of Rutherford County, granting workmen's compensation and medical expenses to Allen B. Lytle.

The parties to this cause will be designated herein as they appeared in the trial court; that is, Allen B. Lytle as plaintiff, and Cromwell General Contractor, Inc. as defendant.

The controversy presents one issue for decision—whether or not plaintiff was an employee of defendant at the time of the accident; or was, as a matter of law, an independent contractor.

Although correctly described as a general contractor, the defendant corporation has specialized in masonry work for approximately twelve years. The corporation sub-contracts to do masonry work within Tennessee and within a radius of 100 miles from Shelbyville, Tennessee.

Plaintiff does both farming and construction work. He owns a small farm in Rutherford County and for three or four years prior to the accident, had worked as a "brick washer" at various construction sites. As a "brick washer," plaintiff removes stain, dirt and excess mortar from the facades of new buildings. Brushes, scrapers, acids and cleaning solutions are used in the process of cleaning brick and stone.

The accident giving rise to this action occurred December 30, 1966, at Columbia, Tennessee, when plaintiff and a helper employed by him were cleaning brick from a "hanging scaffold." The scaffold gave way, throwing plaintiff and his helper to the ground, some 24 feet below.

The work relationship between plaintiff and defendant began in May, 1966. Plaintiff approached defendant, stating that he was in "the brick cleaning business" and inquiring whether or not defendant had work of that nature to be done. Plaintiff and defendant agreed, orally, that for $600.00 plaintiff would undertake to clean all brick used in construction of a hospital at Tullahoma, Tennessee, and to furnish all required material. At or about the same time, plaintiff told defendant that he would undertake all of defendant's brick cleaning for $6.00 per thousand. Generally, the oral understanding reached in May, 1966 continued to govern the relation between the parties, except as hereinafter noted.

In connection with the work done at Tullahoma for defendant, plaintiff supplied all materials, hired two workers and paid their wages. Thereafter, plaintiff also cleaned gray brick at a Junior High School in Clarksville, Tennessee. Plaintiff was paid by defendant at the rate of $6.00 per thousand brick cleaned. At Clarksville, de-

fendant furnished scaffolding and a portion of the acid used in the cleaning process. Plaintiff furnished brushes, hose pipes, a portion of the acid, and hired a helper whose wages were paid by plaintiff. When the work on the gray brick at Clarksville was completed, plaintiff went to Portland, Tennessee, where he worked with another contractor.

While engaged at the Portland site, plaintiff was requested by defendant to return to Clarksville to wash white brick used in construction of the same Junior High School. The parties had great difficulty in cleaning the white brick and were obliged to use various chemical solutions in achieving the desired result. In connection with the cleaning of the white brick, defendant furnished lye, soda, detergent and acid. Plaintiff furnished brushes and scaffolding. Defendant apparently demonstrated the use of certain chemicals for plaintiff and two other men hired and paid by defendant. For his work, plaintiff was paid $6.00 per thousand brick cleaned.

The difficulty with the white brick used in the Clarksville School was apparently so great that a rewashing or recleaning was required. For rewashing the white brick, plaintiff was paid $3.00 an hour and furnished by defendant with materials and help.

Defendant apparently communicated frequently with plaintiff, informing him when and where brick were to be cleaned. Defendant's employees sometimes began washing brick if plaintiff failed to begin the work. Grady Cromwell, an officer of the defendant corporation, testified that he had no control over the time at which plaintiff was to be at work, and that if plaintiff were late, other men would begin cleaning brick. A building at Columbia,

Tennessee was thus half cleaned before plaintiff arrived to complete the work. In that particular instance plaintiff was paid for washing half the brick.

Defendant withheld neither Social Security nor income taxes from plaintiff's checks. Plaintiff's 1965 and 1966 income tax returns stated plaintiff's business name as Lytle Contractor. However, plaintiff testified that an employee of the Farm Bureau completed his tax returns for him without his instructions.

The record reveals that plaintiff cleaned brick for a number of contractors: L. L. Poe, L & M Contractors, T. P. Martin, and a Mr. Hart. Plaintiff was paid by them on several bases: (1) Per 1,000 brick cleaned, (2) per square foot cleaned, and (3) per completed job.

The trial court concluded that plaintiff was an employee of defendant within the meaning of the workmen's compensation statutes of Tennessee. The decision in the trial court rested on reasoning (1) that defendant had the right to fire the plaintiff, (2) that defendant had the right to "dock" plaintiff's pay, (3) that, consequently, plaintiff was subject to the day to day control and supervision of defendant, and (4) that—apparently—the work performed by plaintiff was an integral and necessary part of the conduct of defendant's business.

■ The facts of this case are undisputed; consequently, characterization of plaintiff's legal status as either an employee or an independent contractor becomes a question of law. See *Brademeyer v. Chickasaw Building Co. et al.* (1950), 190 Tenn. 239, 229 S.W.2d 323; *Seals v. Zollo* (1959), 205 Tenn. 463, 327 S.W.2d 41. The case turns, not upon conflicting evidence, but, rather,

upon the legal significance to be given to the facts as adduced before the trial court.

T.C.A. sec. 50-902(b) defines an "employee":

" 'Employee' shall include every person, including a minor, whether lawfully or unlawfully employed, the president, any vice-president, secretary, treasurer, or other executive officer of a corporate employer without regard to the nature of the duties of such corporate officials, in the service of an employer, as employer is defined in paragraph (a) above, under any contract of hire, apprenticeship, written or implied. * * *"

This Court has frequently stated that an independent contractor is one who contracts to perform a service or do a "piece of work" by his own methods and without control or direction by his employer, except as to the result to be achieved. See *Odom v. Sanford & Treadway et al.* (1927), 156 Tenn. 202, 299 S.W. 1045.

■ From these definitions, this Court has developed and applied a number of tests as aids in determining whether a particular work relationship is that of employer-employee, or that of independent contractor. Among these tests are (1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment between the alleged employer and employee, (4) whether or not the alleged employee furnishes his own helpers, and (5) whether or not the alleged employee furnishes his own tools.

■ ■ These tests are no more than a means of analysis. They are not to be applied abstractly, nor are they absolutes which preclude examination of each work relationship as a whole. Utilization of these tests depends upon

the salient facts of a particular relationship. No one test is infallible or entirely indicative of the legal characterization to be given to a particular relationship. The decisional value of any single test is commensurate with the degree of its applicability to the particular case. See *Smart v. Embry et al.* (1961), 208 Tenn. 686, 348 S.W.2d 322; *Seals v. Zollo,* supra, and *Armstrong v. Spears* (1965), 216 Tenn. 643, 393 S.W.2d 729.

■ In this class of cases, the details of the work process change somewhat, from job to job. Upon the instant record, it does not appear that defendant controlled the manner or means by which plaintiff accomplished his work. The closest approach to supervision on the part of defendant occurred in connection with the cleaning of white brick at the Clarksville School. Even that instance is indicative of no more than that plaintiff and Grady Cromwell engaged in some experimentation and mutual suggestion as to which chemical solution and cleaning method would rid the face of the white brick of obstinate foreign matter. Experimentation, or suggestive consultation, is not indicative of a right to control the mode of cleaning brick.

Plaintiff frequently hired and paid his own employees, but he also received help from defendant's employees, without charge. While plaintiff used some materials and scaffolding supplied by defendant, upon this record it is clear that plaintiff furnished a major portion of his own tools and materials.

Over the full duration of the relationship between plaintiff and defendant, plaintiff was almost entirely paid either on a contract price providing for a completed job or on a contract price per thousand brick cleaned.

The oral contract between plaintiff and defendant specified payment by the job, or per thousand brick cleaned. The instance of hourly payment occurred in connection with a final recleaning of white brick at Clarksville, under entirely unusual circumstances. It was at Clarksville (1) that plaintiff was paid an hourly wage for the supplemental work, (2) that plaintiff and defendant repeatedly consulted as to what chemical solution and order of application would get the desired result, and (3) that defendant supplied plaintiff with materials and reimbursed plaintiff for materials purchased at plaintiff's suggestion. Generally, the method of payments as between plaintiff and defendant indicates their relationship to be that of an employer and an independent contractor.

Plaintiff urges upon this Court yet another "test." It is vigorously contended (1) that brick washing is to be regarded as a necessary and integral part of defendant's construction business, and (2) that where an individual performs work necessarily a part of a larger business, he is to be characterized as an employee. In support, it is asserted that *Brademeyer v. Chickasaw Building Co. et al.,* supra; *Seals v. Zollo,* supra; *Armstrong v. Spears,* supra; and *Butler v. Johnson* (1968), 221 Tenn. 366, 426 S.W.2d 515, indicate that this Court has adopted such "test" in determining whether an individual is an employee or an independent contractor.

Critical examination of the decisions mentioned above reveal that they stand for no such thing.

■ Liability under the Tennessee Workmen's Compensation law is based upon the existence of an employment relationship. *Clendening v. London Assurance Co.* (1960), 206 Tenn. 601, 336 S.W.2d 535, 337 S.W.2d 603.

There is, however, no imposition of liability where an alleged employee is either (1) an independent contractor, or (2) a casual employee. As Mr. Justice Chattin aptly pointed out in the case of *Butler v. Johnson,* supra, there is a substantial difference between the determination of whether, on the one hand, an individual is an employee or an independent contractor, and whether, on the other hand, an individual is an employee or a casual employee.

It is this pivot of decision which brings into clear focus the difference between cases which determine whether an employee is ''casual'' or not, and those which turn upon whether or not the injured man is an employee or independent contractor—when the so-called ''relative nature of the work test'' is injected. It becomes clear that such test is of vital significance in the solution of the question whether an individual is an employee or a casual employee. The inquiry has significance—but much less—when the question to be resolved is whether or not an injured man is an employee or independent contractor.

Were the characterization of an individual as either an employee or an independent contractor to depend on whether an integral or substantial part of an employer's total business has been contracted out, the status of independent contractor would be obliterated. In *Armstrong v. Spears,* supra, and *Butler v. Johnson,* supra, the argument that the individuals there involved performed an integral or substantial part of the alleged employers' businesses was primarily directed to a question absent from the instant case. Those cases uniformly pose the initial question of whether the individuals there involved were employees under T.C.A. sec. 50-902(b), and within the coverage of the Tennessee Workmen's Com-

pensation law, or "casual employees" under T.C.A. sec.
50-906(b), and beyond the scope of the Tennessee Work-
men's Compensation law.

The case of *Brademeyer v. Chickasaw Building Co.
et al.,* supra, involved a window washer who was paid by
the owner of an office building to clean windows at 15¢
each. Social Security and income taxes were withheld
and the building owner had the right to terminate the
services of the window washer at any time. The case was
brought before this Court on appeal from the holding of
the lower court that the window washer (1) worked as
an independent contractor, and (2) was a casual em-
ployee. The decision of the lower court was reversed and
this Court held (1) that the window washer was an em-
ployee, and (2) that he was not a casual employee. With
regard to the determination of whether the window
washer was an independent contractor, the opinion on
petition to rehear makes clear that this Court concluded,
as a matter of law, that the building owner had the right
to control the manner in which the windows were cleaned.
The nature of the employer's business, and the relation
to it of the window washer, were examined primarily in
determining whether or not the window washer's work
was casual.

It should be readily apparent that the tests used as aids
to analysis of particular employment relationships vary,
not only according to the facts of each case, but according
to the particular and precise issues presented by those
facts.

One further point remains upon which we may help-
fully comment. It is argued, or perhaps it might be more
accurate to say suggested, that Mr. Lytle's work was

"common labor." A relatively long life and considerable acquaintance with both physical and mental sweat, and even intellectual labor, has convinced us that there is no labor well done that is common. Rather, it is uncommon. This is the unalterable truth without regard as to how skilled the craft in the name of which the work is done.

■ We are thus constrained to the conclusion that the decision of the trial court must be, and is, reversed, and the cause dismissed. Costs are taxed to the defendant in error, the plaintiff below.

BURNETT, CHIEF JUSTICE, and DYER and CHATTIN, JUSTICES, concur.

HUMPHREYS, JUSTICE, dissents.

MR. JUSTICE HUMPHREYS (dissenting).

I respectfully dissent in this case, because it is evident upon a consideration of its effect that it overrules much of the holding of this Court in *Brademeyer v. Chickasaw Building Co. et al* (1950), 190 Tenn. 239, 229 S.W.2d 323. While the opinion does not say this in so many words, and an effort is made to distinguish the cases, this is the effect of it. And because *Brademeyer* was sound in all of its propositions, I do not think we should depart from its holdings.

To illustrate, in the present case it is said the record does not show that the contractor controlled Lytle in the manner and means by which he accomplished his work, and from this the assumption is drawn that the vital element of right to control which characterizes a contract as one of employment rather than independent contractor is missing.

The same situation existed in *Brademeyer*. The record was silent with respect to control but this Court held it would assume the right to control. This holding was predicated on the proposition that, in the absence of a positive showing there was relinquishment of the right to control, the assumption would be made the right existed. This holding is consistent with the rule that the presumption is in favor of the employee relationship. *Frost v. Blue Ridge Timber Corp.*, 158 Tenn. 18, 11 S.W. 2d 860; *Weeks v. McConnell*, 196 Tenn. 110, 264 S.W.2d 573.

So in this very vital area the present opinion departs radically from the *Brademeyer* holding.

In *Brademeyer,* the injured employee was paid at an agreed price per window washed. In this case the primary contract was based on the per thousand brick washed. In *Brademeyer* we held payment for piecework was not evidence of an independent contract. In this case we hold that it is.

In this case in support of the proposition of independent contractor, reference is made to the fact that Lytle hired and paid employees to help him with the work. The same situation existed in *Brademeyer* and yet it was not thought to have the effect here given it.

However, my major concern with the majority opinion is that in holding that even ordinary, manual, unskilled labor, performed as a necessary part of the business of the employer, can be the subject of an independent contract, we go against the overriding, overall purpose and intent of the Workmen's Compensation Law to place upon the employer of such labor the burden of looking

after those who are injured doing his work, rather than to cast this burden on society.

In other words, if plain, ordinary, unskilled hand labor, involving the simplest tools, such as a scrub brush or a wire brush, in the performance of an integral, necessary part of the employer's business, can be made the subject of an independent contract, then there is no work relationship which is protected by the Workmen's Compensation Law from the effect of this device.

The writer recognizes that there must be room for the making of genuine independent contracts in which the party contracting to work does not come under the Workmen's Compensation Act. But this Court, as in *Brademeyer*, should reject the independent contractor defense in cases involving ordinary, unskilled manual labor, involving nothing but the physical exertion of the laborer and the simplest of tools. Such cases are clearly under the letter and purpose and intent of the statute. Since, in my judgment, the opinion in this case helps to make it easier to thwart this expressed public policy, and in so doing goes against our holding in *Brademeyer*, I cannot agree.

I am also in disagreement with the out-of-hand rejection of the "relative nature of the work test" in determining whether the workman is a contractor or an employee. This test is logical and reasonable. Its importance is discussed in Larson's Workmen's Compensation Law, sec. 43.50-43.54, and on authority of a number of cases Larson concludes as follows:

"If, then, control of the details of the work should not be the most relevant factor for compensation purposes, which of the listed factors should be?

The answer, it is submitted, should be this: *the nature of the claimant's work in relation to the regular business of the employer."* Sec. 43.50 (emphasis supplied).

I agree with this as sound law, because its purpose is to serve the policy served by our Workmen's Compensation Law; that of making the employer liable for the injuries suffered by those who regularly do his work from day to day as needed.

Instead of disposing, with a jolly jeer, of the "suggestion" that a common laborer doing a necessary job on a regular basis producing the product the employer is in business to produce can hardly ever be an independent contractor, this Court should adhere to it as it did in brave *Brademeyer.*

## Opinion on Petition to Rehear

MR. JUSTICE CRESON:

A petition to rehear has been filed in this cause which complains of the Court's original majority opinion in three aspects.

The first is that the assignment of errors, written brief and argument of plaintiffs in error was filed so close to the date of the hearing that it prevented opposing counsel from adequately preparing and presenting his case. The second is directed to the idea that the majority opinion considered an issue on which he had no chance to be heard; that is, "the issue of common, unskilled labor." The third is that the majority opinion conflicts with *Brademeyer v. Chickasaw Building Co. et al.* (1950), 190 Tenn. 239, 229 S.W.2d 323.

On re-examination of the record, briefs and arguments, we find no justification whatever for the conten-

tion that there has been denial of opportunity to present and argue any contention. In fact, the full case and every issue made therein have been fully briefed and argued.

There is assuredly no basis for contention that the element of "unskilled labor" was not fully considered. That is the main thrust of the dissenting opinion filed by one of the Justices of this Court. This very issue evoked much thought and discussion and even dissent.

As to the third insistence, with respect to the prior opinion in *Brademeyer v. Chickasaw Building Co. et al.,* supra; this, too, is without merit. That opinion was given extended and thoughtful consideration. All of the members of the Court are in complete agreement with that opinion, and were at the time of release of the original opinion in this case. It is quite apparent in the case cited (1) the parties were, in fact, employer and employee; (2) the legal relationship, as well as the factual, was that; and (3) the parties in that cause fully recognized and intended such to be their status.

Such is not the instant case, and the petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and DYER and CHATTIN, JUSTICES, concur.

HUMPHREYS, JUSTICE, dissents.