

**FILED**
**Jul 06, 2023**
**04:13 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Andres Hernandez | ) | Docket No. 2021-06-1105 |
| | ) | |
| v. | ) | State File No. 800494-2021 |
| | ) | |
| SMS, Inc., d/b/a Master Stucco, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer challenges the trial court's determination that the employee is likely to prevail at trial in proving he was an employee eligible to seek workers' compensation benefits. Upon careful consideration of the record, we affirm the trial court's order for reasons other than those stated by the trial court and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Meredith B. Weaver joined. Judge Pele I. Godkin dissented.

Jackie Sharp, Jr., Nashville, Tennessee, for the employer-appellant, SMS, Inc., d/b/a Master Stucco

Andres Hernandez, Madison, Tennessee, employee-appellee, pro se

### Factual and Procedural Background

Andres Hernandez ("Claimant") worked as a laborer for SMS, Inc., d/b/a Master Stucco ("Employer"). On July 27, 2021, Claimant was walking across a scaffold when he purportedly stepped on a misplaced board and fell from one level of the scaffold to the next level down. He was subsequently diagnosed with a fracture in his left shoulder.

Employer denied the claim, asserting that Claimant was an independent contractor, not an employee. Employer alleged that Claimant was free to set his own work hours and work for other companies at his discretion. It further asserted that Claimant acknowledged in writing his status as an independent contractor, had no taxes withheld

1

from his pay, and was issued a Form 1099. Employer also argued that it did not provide any tools or, if any tools were purchased for a job at a worker's request, the worker was required to reimburse Employer for the cost of those tools. Finally, Employer asserted that, because Claimant was unable to provide documentation of his eligibility to be an employee in the United States, Employer "had no other option . . . than to employ [Claimant] as an independent contractor/1099 worker."

During the expedited hearing, Claimant testified through an interpreter that he began working for Employer after arriving in the United States from Mexico.[1] He stated that his brother-in-law invited him to work for Employer and "said they needed people there." He worked as a general laborer for approximately eight or nine months before the work accident. When he began working for Employer, he rented space in a house owned by Glen Cruzen, Employer's owner. Two other workers lived there with him, one of whom he identified as his brother-in-law and the other as Jose Antonio.[2] Claimant rode to work with his housemates because he had no vehicle of his own.

The record does not reflect whether Claimant worked regularly for Employer or whether he reported to jobsites only when work was available. The only evidence arguably touching on this issue was Claimant's testimony that he lived with co-workers at a house owned by Mr. Cruzen, he rode with co-workers to and from work, and he was "working with them all the time I was working there." Claimant also testified that "my employer was keeping up with the records of my hours."

After the accident, Claimant was allegedly told by a worker named Jose to lie to emergency room personnel about how he had fallen.[3] Ultimately however, because the Claimant could not communicate with emergency room personnel, the man who transported Claimant to the hospital allegedly related what had happened, and Claimant testified that he merely signed whatever papers were presented to him without understanding what he was signing.

---

[1] Claimant testified that he does not speak or read English, and he understands only some Spanish because he was raised in a community that primarily speaks Nawat, a language native to Central America.

[2] During the expedited hearing, another person identified as "Jose" was described as working primarily as an interpreter on the jobsite. However, the testimony of various witnesses was often confusing regarding whether the witness was referring to Jose, the interpreter, or Jose Antonio Lopez, the co-worker who lived with Claimant and his brother-in-law.

[3] Employer made multiple hearsay objections during the course of Claimant's testimony, some of which were sustained and some of which were overruled. With respect to out-of-court statements allegedly made by Jose (who Claimant alleged was a "boss" but who Employer alleged was a "courier" with no supervisory duties who primarily served as an interpreter), the court concluded that Claimant had "satisfied his burden of proving Jose's position" and overruled the hearsay objections. That specific determination has not been appealed.

2

Claimant asserted during the expedited hearing that Employer controlled his work hours and his work activities. He described his job as being a "helper," and he testified he was paid by the hour. He stated that co-workers drove him to jobsites and took him back home after a work shift. Finally, he asserted that "the boss" or his brother-in-law would provide whatever tools were needed on the jobsite.

Employer presented testimony from Jose Antonio Lopez, who described himself as a "contractor" of Master Stucco. When asked if Claimant was a contractor, Mr. Lopez responded, "Well, I think so, but he says no." Mr. Lopez confirmed that he lived in the same house as Claimant and Claimant's brother-in-law while Claimant worked for Employer. He further testified there were multiple meetings where "Mr. Jose" gathered all the workers to explain the meaning of paperwork they were asked to sign confirming their status as independent contractors. Mr. Lopez further explained that Jose was bilingual and would translate written documents and explain the contents to the workers. Finally, Mr. Lopez testified that he owns his own tools and uses them on jobsites as needed. He also allowed Claimant to use his tools on jobsites when needed.

Mr. Cruzen testified regarding the nature of his business and his hiring practices. He asserted that the pool of workers available in the area for construction jobs is limited and that there are many undocumented workers seeking such work. According to Mr. Cruzen, he is prohibited by law from hiring undocumented workers as employees, but he is not under the same legal restrictions if he uses independent contractors. Mr. Cruzen testified that he explains to all workers the nature of their independent contractor status. He further testified that his workers are able at any time to leave his jobsite and work for other contractors. As an example, Mr. Cruzen stated that Claimant's bother-in-law left his jobsite for several months to work for another contractor, then returned to his jobsite before leaving again. Mr. Cruzen explained that he supplies raw materials needed for any particular job, but he requires workers to bring their own tools. Although he visits every jobsite on an almost-daily basis, he is not regularly present at jobsites directing the work. He hires both skilled and unskilled laborers. He allows workers to choose to be paid by the job or by the hour, but, in his view, this does not impact their status as independent contractors. He does not withhold taxes and testified that he issues 1099 forms to all workers.[4] Finally, Mr. Cruzen testified that he periodically asks all workers to sign written statements affirming their status as contractors and the pay arrangement. He testified that Claimant was in attendance at most of these meetings.

With respect to Claimant, Mr. Cruzen claimed that he explained the work relationship as a "contractor" when he offered Claimant work, and Claimant never questioned his status as an independent contractor and never asked to be classified as an employee. He further asserted that Claimant never presented him with a "green card," a

---

[4] During the expedited hearing, Employer did not offer into evidence any Form 1099 purportedly provided to Employee, and Employee testified he was not sure whether he had such a form.

3

work visa, a Social Security Number, or any other documentation indicating that he was eligible to work as an employee in the United States. Mr. Cruzen also testified that the man referred to as "Jose" worked primarily as an interpreter at jobsites. He also "assist[ed] us in driving his truck to deliver materials and translating when there [were] questions out in the field, but I do not consider him a boss." He also denied that Jose had any authority to speak for him or on behalf of the company.

Following the expedited hearing, the trial court concluded Employee had come forward with sufficient evidence indicating he would likely prevail at trial in proving he was an employee and not an independent contractor. Consequently, the court ordered Employer to initiate medical benefits and authorize the physician who Claimant had already seen to continue to provide treatment. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018).

Although the trial court's factual findings are entitled to a presumption of correctness, the determination of whether a worker is an employee or an independent contractor is a question of law that we review *de novo* with no presumption of correctness. *See Lindsey v. Trinity Communs., Inc.*, 275 S.W.3d 411, 418 (Tenn. 2009). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

## Analysis

In *Smiley v. Four Seasons Coach Leasing, Inc.*, No. 2016-06-0104, 2016 TN Wrk. Comp. App. Bd. LEXIS 28 (Tenn. Workers' Comp. App. Bd. July 15, 2016), we addressed the factors to be considered in analyzing whether an injured worker is an

employee or an independent contractor for workers' compensation purposes.[5]   After noting the seven statutory factors listed in Tennessee Code Annotated section 50-6-102(10)(D)(i), we explained, "[t]hese factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis." *Id.* at *10 (citing *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn. 1982)).[6]   We also emphasized that "[w]hile no single factor is determinative, the Tennessee Supreme Court has repeatedly emphasized the importance of the right to control [the conduct of the work]." *Id.* (internal citation and quotation marks omitted). Finally, we noted that "[t]he fact that a company did not deduct [S]ocial [S]ecurity or income taxes is not a controlling factor in deciding whether an employer-employee relationship existed." *Id.* at *11.

Here, this issue was presented to the trial court at an expedited hearing, meaning the burden of proof was different than at a trial.  To support an order for the initiation of workers' compensation benefits, an employee has the burden of coming forward with sufficient evidence from which the trial court could conclude he is likely to prevail at trial in proving he is eligible to seek workers' compensation benefits. *See, e.g.*, *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5-6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).  Further, the Tennessee Supreme Court has stated that "[o]nce an employment relationship is established, the employer bears the burden of proving that the worker was an independent contractor rather than an employee." *Lindsey v. Trinity Communications*, 275 S.W.3d at 418.

In considering the first of the seven statutory factors listed in Tennessee Code Annotated section 50-6-102(10)(D), "the right to control the conduct of the work," the trial court determined that Mr. Cruzen, as owner of the company, consistently went to every jobsite on a daily basis to check on the progress of the contracted work.  It noted Mr. Cruzen's testimony that he is detail oriented and demanding in his expectations of his workers.   Relevant to the second factor, "the right of termination," the court also emphasized Mr. Cruzen's testimony that he was cautious in hiring workers in an effort to enhance and protect his company's reputation in the industry.  The trial court determined this testimony supported a finding that Employer exercised significant control over the conduct of the work and retained the right of termination.

---

[5] The statutory factors include: (a) the right of control over the conduct of the work; (b) the right of termination; (c) the method of payment; (d) the freedom to select and hire helpers; (e) the furnishing of tools and equipment; (f) self-scheduling of work hours; and (g) the freedom to offer services to other entities.  Tenn. Code Ann. § 50-6-102(10)(D)(i).

[6] We note that, for purposes of unemployment compensation, Tennessee Code Annotated section 50-7-207(b)(2)(B) mandates consideration of a list of twenty factors in evaluating the existence or lack of an employer-employee relationship in accordance with IRS Revenue Ruling 87-41.  For purposes of online marketplace platforms, Tennessee Code Annotated section 50-8-102(a) contains a list of ten factors to be considered in evaluating the existence or lack of an employer-employee relationship.

With respect to the other statutory factors, the trial court found it significant that, as the owner of the house where Claimant resided, he could effectively control Claimant's work hours because Claimant, who had no vehicle, was dependent on co-workers to get him to and from the jobsites. Further, the court noted that, although Claimant theoretically could offer his services to other companies, he was effectively prevented from doing so because of his housing situation and his lack of transportation. Consequently, the court concluded Employer effectively controlled "housing, transportation, 'pay arrangement,' hours, work conduct and performance, as well as hiring and firing." Under such circumstances, the court concluded Claimant was likely to prevail at trial in proving he was an employee for workers' compensation purposes.

In assessing where the preponderance of the evidence lies, as we are compelled to do by Tennessee Code Annotated section 50-6-239(c)(7), we conclude the issue is significantly closer than indicated by the trial court. Mr. Cruzen's testimony as a whole supports a finding that, although he is detail oriented and demanding, he was primarily concerned with the end result, not the particular manner or means by which that result was achieved. In *Lindsey v. Smith & Johnson, Inc.*, 601 S.W.2d 923 (Tenn. 1980), the Tennessee Supreme Court emphasized this point, explaining as follows:

> Generally, when the general contractor has a right to supervise or inspect the work to see that the end result conforms to plans and specifications but has no right of control over details of performance and methods to achieve this result, the general or principal contractor and the worker do not have an employer-employee relationship. That worker is an independent contractor.

*Id.* at 925.

Moreover, the trial court acknowledged Claimant's ability to offer his services to other companies but concluded he did not do so because of the limitations of his living arrangement and lack of transportation. Yet, there is nothing in the record to indicate Claimant was compelled to rent space in a house Mr. Cruzen owned as a condition of the employment. There is nothing indicating that Employee's lack of transportation was in any way connected to his employment. Thus, we conclude the preponderance of the evidence does not support a conclusion that Employer "effectively controlled" Claimant's housing or transportation, as there is nothing in the record suggesting that Claimant was precluded from living elsewhere or making other arrangements for transportation.

Furthermore, Employee did not offer any evidence that he held a green card, a work visa, or any other documentation evidencing a legal right to be employed in the United States. Mr. Cruzen's testimony that he is legally prohibited from hiring such workers as employees was unrefuted, as was his explanation of why he hired workers as independent contractors, allowing them to choose a method of payment, requiring them

to furnish tools or reimburse Employer the cost of tools, and acknowledging their ability to offer their services to other companies at any time.

Yet, we must also consider that Employee, as a general laborer who primarily worked as a "helper" on jobsites, did not hold himself out as an independent contractor. Employee asserted that he signed the documents presented to him as a condition of getting paid, but he did not consider himself a contractor, stating: "[T]hey were paying me per the hour. They control my hours; I have never had control of my hours . . . I'm always a helper. I'm not a contractor." During cross-examination, when asked whether he ever asked his brother-in-law to explain the meaning of the documents he was asked to sign, Employee responded, "I never dared to ask."

In *Cromwell General Contractor, Inc. v. Lytle*, 439 S.W.2d 598 (Tenn. 1969), the Tennessee Supreme Court considered the analysis to be used in determining whether a worker is an employee or an independent contractor. In particular, the Court addressed whether, in circumstances where a worker performs "work necessarily a part of a larger business" or work that is an "integral part of [the] defendant's construction business," the worker should be deemed an employee for workers' compensation purposes. *Id.* at 602. Although the Supreme Court concluded that this particular test is more relevant in circumstances where a trial court is assessing whether a worker is a "casual" employee pursuant to Tennessee Code Annotated section 50-6-106(2), it nevertheless concluded that the test has some relevance "when the question to be resolved is whether or not an injured [worker] is an employee or independent contractor." *Id.*

In the present case, Mr. Cruzen discussed the cleaning of jobsites as an example of an integral part of the job and testified that, at times, he had "brought in companies who only clean up jobsites." At other times, however, he concluded it was "easier to also have people who can do that for us, if it's small, in house." Thus, Mr. Cruzen considered using laborers such as Claimant as an "in-house" alternative to hiring outside cleaning companies to perform this integral part of his business.

In *Warner v. Potts*, No. M20093-02494-WC-R3-CV, 2005 Tenn. LEXIS 369 (Tenn. Workers' Comp. Panel Apr. 29, 2005), the Supreme Court's Special Workers' Compensation Appeals Panel addressed the analysis used in determining the nature of a work relationship, explaining that courts can consider "whether the work being performed by the contractor in question is the same type of work usually performed by the company or is part of the regular business of the company." *Id.* at *7. The Appeals Panel also discussed the significance of a written agreement in addressing the nature of a work relationship:

> It is the duty of the court to determine if a worker is an employee or independent contractor, and the employer cannot use a contract to take that responsibility from the court. The Workers' Compensation Act similarly

7

prohibits the use by an employer of any "contract or agreement, written or implied, or rule regulation or other device" to evade its workers' compensation obligations. The cited code section clearly establishes the public policy against the making of any agreement which would reduce an employer's liability for permanent disability benefits under the Act.

*Id.* at \*10 (internal citations omitted). *See also Fayette Janitorial Services v. Kellogg United States, Inc.*, No. W2011-01759-COA-R3-CV, 2013 Tenn. App. LEXIS 66, at \*16-17 (Tenn. Ct. App. Feb. 4, 2013).

In *Lindsey v. Trinity Communications*, the Supreme Court noted that "the right of termination has taken on 'controlling significance' in [Tennessee] case law." 275 S.W.3d at 419. "The power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor." *Id.* (quoting *Masiers*, 639 S.W.2d at 656). Here, Mr. Cruzen testified to the care he took in selecting workers in his effort to maintain a reputable business. For example, Mr. Cruzen stressed that he had "zero tolerance for any dishonesty because if I can't trust them, then they represent a risk to my business." A reasonable inference from Mr. Cruzen's testimony is that he retained the right to terminate workers at will, which is a hallmark of an employer-employee relationship. Hence, we agree with the trial court's determination on this issue.

Finally, we note that neither party presented any evidence regarding whether Claimant had the authority to select and hire workers to assist him in his duties. *See* Tenn. Code Ann. § 50-6-102(10)(D)(i)(c). However, Mr. Cruzen's testimony, when considered as a whole, strongly implies that he retained the right to hire and fire all workers at the jobsite. With regard to this factor, we conclude the preponderance of the evidence indicates that Claimant had no authority to hire workers to assist him in his job duties as a general laborer, which further supports a finding that he is likely to prove he was an employee for worker's compensation purposes, not an independent contractor.

In sum, although the issue is close, we conclude that, once Claimant established the existence of a work relationship with the company, Employer did not meet its burden of showing that Claimant was an independent contractor and not an employee. We therefore conclude, as did the trial court, that Claimant came forward with sufficient evidence at the expedited hearing indicating a likelihood of prevailing at trial in proving he was an employee eligible to seek workers' compensation benefits.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.

8



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Andres Hernandez | ) | Docket No.     2021-06-1105 |
| | ) | |
| v. | ) | State File No.   800494-2021 |
| | ) | |
| SMS, Inc., d/b/a Master Stucco, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

Godkin, Pele I., J., dissenting

The majority concludes that Claimant came forward with sufficient evidence at the expedited hearing to show he is likely to prevail at trial in establishing he is eligible to seek workers' compensation benefits. In doing so, my colleagues also conclude that Employer failed to meet its burden of establishing that Claimant was an independent contractor. I respectfully disagree.

In the majority opinion, my colleagues conclude that Employer's unrefuted testimony as a whole supports a finding that he was primarily concerned with the result of the work performed and not the manner or means by which that result was achieved. In my view, this conclusion suggests there was insufficient proof that Employer retained the right to control the conduct of Claimant's work, as long as the desired result was achieved. The majority also observes that Employer allowed Claimant the opportunity to choose whether he wanted to be paid by the hour or per job. Further, my colleagues note Employer's unrefuted testimony that workers were required to furnish their own tools or reimburse Employer for the cost of tools purchased at the worker's request. I agree with these observations and would suggest that each of these determinations supports a finding that Claimant was an independent contractor.

I disagree with the majority's conclusion that Claimant is likely to prevail at trial in establishing his eligibility to seek workers' compensation benefits premised, in part, on testimony suggesting that Claimant was an "in-house" alternative used to perform duties that were an "integral part" of Employer's business. In my view, the majority places undue weight on the "relative nature of the work test" in light of certain deficiencies I see in the

1

proof.[1]  In addition, I do not agree there was sufficient evidence to support a finding that Employer retained a right of termination or that Claimant lacked freedom to select and hire helpers.

Central to the majority's analysis is the conclusion that Claimant was a general laborer who had no particular construction skills and was only a "helper" on job sites based on his testimony at the hearing.  While Claimant did testify that he was a "helper" and provided aid to other workers who placed scaffolding, he also stated in his Rule 72 Declaration describing how his injury occurred that he "was laying cement and putting stucco on a chimney at 4:30 p.m. and I didn't bring security equipment (harness)."  A reasonable inference from this statement is that the work he performed, at least to some extent, was the same work performed by other workers on the job site.  Other than the quoted statement, I find no proof in the record indicating what kind of "help" Claimant provided, whether he performed certain tasks independent of other workers, or if any of his work was "skilled" or "unskilled."[2]  Thus, it is my opinion that the evidence is insufficient to determine precisely what kind of work Claimant performed while on the jobsite and whether that work should be classified as "skilled" or "unskilled."[3]

The majority relies on *Cromwell General Contractor, Inc. v. Lytle*, 439 S.W.2d 598 (Tenn. 1969), for the proposition that Claimant, as a laborer, performed work that was an "integral part" of Employer's business and that, therefore, the evidence presented at the expedited hearing supports a finding that Claimant was an employee for workers' compensation purposes.  In support of this position, the majority references certain testimony from Employer to conclude there is a "reasonable inference" that Claimant was an "in-house" alternative to Employer's hiring outside services to perform "integral" clean-up work.  When questioned regarding his business, Employer testified that the business is primarily focused on repair and maintenance of stucco structures, later expounding as follows on direct examination:

---

[1] As noted by the majority, Tennessee Code Annotated section 50-6-102(10)(D)(i) identifies seven factors that a court should consider when determining whether an individual is an employee or independent contractor.  These factors are no more than a means of analysis and should not be applied abstractly, and they do not preclude examination of each work relationship as a whole.  *See Cromwell General Contractor Inc. v. Lytle*, 439 S.W.2d 598, 601 (Tenn. 1969).  However, in order to meaningfully apply the "relative nature of the work test," it is necessary in my opinion to have more in-depth testimony concerning the nature of Employer's work and the nature of the work Claimant did for Employer.  As discussed in more detail below, I conclude that proof is missing from the testimony.

[2] While the trial court did not make any explicit findings regarding the parties' credibility, the record reflects many troubling inconsistencies in Claimant's testimony, including statements made regarding his knowledge (or alleged lack thereof) concerning the terms of his work relationship with Employer.

[3] Depending on the facts of a particular employment relationship, both skilled and unskilled workers can be deemed either employees or independent contractors.  I take issue with this portion of the majority's analysis because, at this stage of the case, *we do not have sufficient information* regarding whether Claimant was skilled or unskilled or the nature of the work he performed.

2

A: With that said, 95 percent of what we do has nothing to do with stucco. What fails with stucco is caused by materials that intersect with stucco, roof flashings, caulkings, failed windowsills, many other materials. Therefore, we repair a wide variety of other materials that lead to damage to stucco.

. . . .

A: This requires us to use other tradesmen who have experience. Some of the work is just general labor, let's say removing a stucco panel and maintaining a site, because it's a messy business. For example, pressure washing a driveway that got cement on it during the project. Therefore, we're not really a stucco company. We maintain or repair structures to prevent damage.

. . . .

Q: So it sounds like to me when you have a project, you need mostly skilled workers that do certain things to come in and do the work?

A: We use both skilled and unskilled in that why have somebody who's a skilled person who's expensive cleaning?

Q: Okay. So the need dictates what type of contractor you require?

A: Yes. So, for example, we have brought in companies who only clean up job sites. They don't need tools or specialty training. And so, sometimes it's easier to also have people who can do that for us, if it's small, in house.

In my opinion, a plain reading of this testimony reveals that Employer was simply responding to questioning that asked him to describe general aspects of his work practices. I find nothing to suggest he was addressing Claimant's work specifically. Employer simply explained the types of workers hired by his company, both skilled and unskilled, as well as the reasons for hiring each type. Missing from Employer's testimony referenced above is any reference to Claimant, the type of work Claimant performed, or the type of work Claimant was hired to perform. Thus, any conclusion that Claimant was being used as an in-house alternative to an outside company is, in my opinion, speculative at best.

Further, as my colleagues noted in the majority opinion, the "relative nature of the work" test is typically used when a court is analyzing whether a worker is a "casual employee." In *Cromwell*, the court explained:

3

It becomes clear that such a test is of vital significance in the solution of the question whether an individual is an employer or a causal employee. The inquiry has significance – *but much less* – when the question to be resolved is whether or not an injured man is an employee or independent contractor.

Were the characterization of an individual as either an employee or an independent contractor to depend on whether an integral or substantial part of an employer's total business has been contracted out, the status of independent contractor would be obliterated.

*Cromwell General Contractor Inc.*, 439 S.W.2d at 601 (emphasis added).

Thus, in this case and based on the record before us, I conclude the "relative nature of the work" test is not helpful in determining whether Claimant is an employee or independent contractor because this type of analysis necessarily relies on information that is absent from the record. We do not know the type of work Claimant performed, whether it was skilled or unskilled, what being a "helper" means, or whether any of this work should be considered "integral" to Employer's business. Because we do not have this information, it is my view that we cannot actually determine the "relative nature of the work," meaning that our analysis must be based on other factors identified by the majority. It is further my view that those factors do not support a conclusion that Claimant is likely to prevail at trial.

In affirming the trial court, the majority also emphasized that the designation given by the parties in a contract is not controlling. While I agree with my colleagues that a contract signed by Claimant purporting to establish him as an independent contractor is not controlling, it is my opinion that the evidence still supports a finding Claimant was aware of and understood the terms and nature of his work as an independent contractor. For example, Employer and Jose Lopez, another worker who lived with Claimant, testified that at least one meeting took place where the employment relationship was explained to Claimant, his brother-in-law, and Mr. Lopez with the assistance of an interpreter. According to Mr. Lopez, parties had one week to review the documents before they were signed. Claimant initially claimed there were *no* meetings where these documents were discussed and testified that Employer did not explain the documents he was to sign, but then later stated that he "never saw [Employer] at the meeting." When questioned about the documents themselves, Claimant testified he did not know what he was signing. When asked why he never inquired about the documents, Claimant responded, "[a]s I said, it's not that I didn't care, it's just I was receiving payments." He also testified that although he had a good relationship with his brother-in-law, Claimant never questioned him about what he was signing or what the documents meant. When considered within the context of Claimant's entire testimony, including a multitude of inconsistent and contradictory statements, I believe the evidence establishes Claimant was aware of the terms and nature of his work as an independent contractor. In addition, although Employee testified that he was paid by the hour, Employer's testimony that he gave workers the choice of being paid

4

by the project or by the hour was unrefuted.  In these circumstances, Claimant's selection of a payment method is not, in and of itself, evidence of a particular type of employment relationship.

Finally, the court concluded that Employer retained the right of termination based solely on testimony that he was careful to hire only honest and responsible workers.  Although this testimony could certainly suggest Employer retained the right of termination, which would typically weigh in favor of finding an employment relationship, there is nothing explicit in the record that supports this conclusion.  Moreover, there is also unrefuted testimony that the workers hired by Employer could and did work for other contractors with no adverse consequences.  Thus, whether Employer retained the right of termination is not dispositive or even, in my view, persuasive under the circumstances of this case.

For the reasons discussed above, my review of the record leads me to conclude that the preponderance of the evidence does not support the trial court's determination that Claimant is likely to prevail at trial.  Therefore, I would reverse the trial court's order.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Andres Hernandez | ) | Docket No. 2021-06-1105 |
| | ) | |
| v. | ) | State File No. 800494-2021 |
| | ) | |
| SMS, Inc., d/b/a Master Stucco, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's order in the referenced case was sent to the following recipients by the following methods of service on this the 6th day of July, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Ritchie Pigue | | | | X | rpigue@tpmblaw.com<br>mwatson@tpmblaw.com<br>dsmith@tpmblaw.com<br>jsharp@tpbmlaw.com |
| Andres Hernandez | | | | X | andres.hernandez.hernandez1973@gmail.com |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov